NUMBER 13-02-578-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







CARLOS KELLY
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 24th District Court


of Refugio County, Texas.






O P I N I O N



Before Justices Rodriguez, Castillo, and Wittig (1)


Opinion by Justice Castillo


 

 Appellant Carlos Kelly appeals the imposition of deferred adjudication
community supervision for possession of less than one gram of a controlled substance. 
Kelly challenges the trial court's denial of his suppression motion and right to a speedy
trial. We reverse and remand. 

I. BACKGROUND


 Kelly pleaded no contest pursuant to an agreed punishment recommendation. 
The trial court followed the agreement, deferred an adjudication of guilt, assessed a
fine of $1,500, and placed Kelly on community supervision for a term of five years. 
A plea memorandum in the record, signed by Kelly, his attorney, and the prosecutor, 
reflects that Kelly reserved the right to appeal the trial court's ruling on his pre-trial
motion to suppress and speedy trial motion. On October 10, 2002, Kelly filed a timely
general notice of appeal that did not comply with former rule 25.(2)(b)(3). See Tex.
R. App. P. 25.(2)(b)(3) (amended effective January 1, 2003). Meanwhile, the rules of
appellate procedure applicable to criminal appeals were amended. 

 II. APPLICABLE APPELLATE RULES


 Generally, rules altering procedure do not fall within the prohibition in the Texas
Constitution against retroactive application of laws that disturb vested, substantive
rights. See Tex. Const. art. I, § 16; see also Ibarra v. State,
11 S.W.3d 189, 192 (Tex. Crim. App. 1999). Therefore, this Court applies the
current rules of appellate procedure to this appeal. We may not affirm or reverse a
judgment or dismiss an appeal for formal defects or irregularities in appellate procedure
without allowing a reasonable time to correct or amend the defects or irregularities. 
Tex. R. App. P. 44.3. We also are prohibited from affirming or reversing a judgment
or dismissing an appeal if the record prevents the proper presentation of an appeal and
can be corrected by the trial court. Tex. R. App. P. 44.4(a). Accordingly, we abated
the appeal on July 21, 2003 and ordered a supplemental record to include, in
compliance with rule 25.2(a)(2), the trial court's certification of Kelly's right of appeal. 
See Tex. R. App. P. 25.2(a)(2). We received a supplemental record on August 8, 2003
that includes the trial court's certification of Kelly's right of appeal. The certification
reflects that the trial court gave its permission to Kelly to appeal his suppression and
speedy trial motions. We now turn to the issues Kelly raises on appeal. 

III. THE ISSUES ON APPEAL


 By issues one and two, Kelly contends the trial court abused its discretion in
denying Kelly's amended motion to suppress because: (1) the warrant did not comply
with statutory requirements; and (2) the search of Kelly's home was unconstitutional. 
In his third issue, Kelly asserts that the State violated his constitutional right to a
speedy trial. 

 Reversal on the basis of a speedy trial violation results in dismissal. See
Brecheisen v. State, 4 S.W.3d 761, 764-65 (Tex. Crim. App. 1999). Accordingly, we
address the speedy trial issue first. See id. 

IV. THE SPEEDY TRIAL MOTION


 In conducting a speedy trial review, our first step is to establish the
circumstances surrounding the bringing of the case to trial. Moreno v. State,
987 S.W.2d 195, 198 (Tex. App.-Corpus Christi 1999, pet. ref'd). Significant factors
include: (1) the date the accused was arrested or charged; (2) the date of trial; (3) the
State's excuse for any delay before trial; (4) the accused's actions in asserting the
right to a speedy trial; (5) whether evidence or witnesses have been lost; and
(6) whether the accused has suffered emotionally from the wait. Id. at 198-99. 

A. Surrounding Circumstances


 Kelly was arrested on May 6, 2001. The State charged and indicted him for
possession of more than four (4) grams of a controlled substance. Kelly was released
on bond. The State also filed a motion to revoke Kelly's probation in a prior case,
alleging as grounds for the revocation motion the same possession of a controlled
substance that serves as the basis of this prosecution. (2) The State filed an
announcement of ready in this case on July 20, 2001. Kelly appeared for arraignment
on August 21, 2001. On September 21, 2001, Kelly filed a motion for physical
inspection of the seized evidence. He asserted in the motion that he had a "good faith
belief that the amount of substance seized allegedly from Movant's possession is less
than the State claims." Kelly then appeared for settings on September 27, 2001 and
October 18, 2001. 

 On October 22, 2001, the State submitted the seized substance for analysis by
the Texas Department of Public Safety. Kelly appeared for another setting on
November 13, 2001. The DPS laboratory provided to the State an analysis of the
seized substance on December 6, 2001. The analysis concluded that the amount of
controlled substance was .92 grams.

 Meanwhile, Kelly appeared for settings on December 17, 2001 and February 7,
2002. On February 27, 2002, the motion to revoke was heard in the other case. 

 Although the trial judge controls the docket and setting of cases in Refugio
County, the district clerk testified that her policy is to set a case being carried on the
docket when requested by the district attorney's office. On June 12, 2002, the State
sent a letter to the clerk that announced that the case was "now ready to be set on
the criminal docket" and requested a trial setting on July 9, 2002. In response, the
trial court set the case on the trial docket for the requested date. Kelly, although
apparently late to court, appeared again on July 9, 2002. The trial court reset the
case for July 29, 2002. The State filed an unopposed motion for continuance on
July 10, 2002. As grounds for the motion, the State explained that a critical State's
witness needed training to renew certification before September 1 and would be in
training and unavailable on July 29, 2002. On August 2, 2002, Kelly filed his motion
to dismiss on speedy trial grounds. He did not seek an immediate trial. The trial court
reset the case to September 17, 2002 and again to October 7, 2002. 

 The trial court heard Kelly's motion to dismiss on October 7, 2002. Kelly
testified that he had been employed before his arrest but had been unable to find work
since then because he was required to repeatedly show up at court. He said that he
was required to seek transportation to and from court from other family members, who
also were inconvenienced. He said he was "real worried" because of the pendency of
the case, which he understood to be a second-degree felony as charged by the State. (3) 
He testified that his memory of events surrounding the search and arrest was "not
really" as clear as it would have been immediately after the events. 

 On cross-examination, Kelly acknowledged that his counsel had told him
laboratory tests had confirmed that the actual amount of controlled substance involved
was less than one gram, a state jail felony. (4) Kelly also admitted that his probation
reporting requirements in the companion case required him to miss work as well as to
travel farther than his appearances at court for this case demanded. He agreed that
the offense for which he was charged in this case was the basis of the probation
violation to which he had pleaded "true" in February of 2002 in the companion case. 

 The prosecutor testified at the speedy trial hearing that he could have been
ready for trial before receiving the laboratory analysis in December of 2001. He
explained that he would have requested expedited handling of the analysis if the case
had been set for trial. Other than the unavailability of an official witness because of
training commitments as grounds for its motion for continuance of the July 29, 2002
trial setting, the State provided no explanation for the delay of seventeen months
between Kelly's arrest on May 6, 2001 and the date of the hearing on October 7,
2002. 

 Reserving his right to appeal the speedy trial issue, Kelly pleaded no contest on
October 7, 2002 to possession of less than one gram of a controlled substance, a
lesser offense than that alleged in the indictment. This appeal ensued. 

B. Applicable Law


1. Standard of Review


 A bifurcated standard applies to our review of a trial court's resolution of an
accused's motion to dismiss on speedy trial grounds. Zamorano v. State,
84 S.W.3d 643, 648 (Tex. Crim. App. 2002); State v. Munoz,
991 S.W.2d 818, 821 (Tex. Crim. App. 1999); Moreno, 987 S.W.2d at 199. An
abuse-of-discretion standard applies to our review of the trial court's fact findings in
determining speedy trial motions. Munoz, 991 S.W.2d at 821; Moreno,
987 S.W.2d at 199. Once the facts are established, we review de novo application
of the law to those facts. Munoz, 991 S.W.2d at 821; Moreno, 987 S.W.2d at 199. 
Kelly lost in the trial court on his speedy trial claim. Accordingly, we presume the trial
court resolved any disputed facts in the State's favor. See Zamorano, 84 S.W.3d
at 648. We also defer to implied fact findings that the record supports. Zamorano,
84 S.W.3d at 648. 

 Most of the facts here are undisputed. Thus, the primary focus in this case is
on the legal significance of the facts to Kelly's claim. See id. We review each speedy
trial claim on its own merits. See Knox v. State, 934 S.W.2d 678, 681 (Tex. Crim.
App. 1996); Moreno, 987 S.W.2d at 199. The difficult and sensitive balancing as a
whole involved in analyzing speedy trial issues is a legal question that we review do
novo. See Zamorano, 84 S.W.3d at 648, n.19. 

2. Substantive Factors


 The right to a speedy trial is guaranteed by the Sixth Amendment of the United
States Constitution and applies to the states through the Fourteenth Amendment. 
U.S. Const. amends. VI, XIV; Klopfer v. North Carolina, 386 U.S. 213, 222-23
(1967). Additionally, our own state constitution and code of criminal procedure
guarantee an accused's right to a speedy trial. Tex. Const. art. I, § 10; Tex. Code
Crim. Proc. Ann. art. 1.05 (Vernon Supp. 2003). While the state constitutional right
to a speedy trial operates independently of the federal guarantee, we interpret the
rights congruently. Zamorano, 84 S.W.3d at 648; Harris v. State,
827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Thus, we balance the same factors
federal courts apply to determine if a violation of the right to a speedy trial has
occurred. Zamorano, 84 S.W.3d at 648. The factors we weigh and then balance are:
(1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of
the right to a speedy trial; and (4) prejudice to the accused as a result of the delay. 
Barker v. Wingo, 407 U.S. 514, 530-32 (1972); Munoz, 991 S.W.2d at 821. No
single factor is decisive in determining whether an accused has been deprived of the
right to a speedy trial. Barker, 407 U.S. at 533. We consider all of the factors
together, along with any other relevant circumstances. Id. 

a. Length of Delay


 The length of the delay is a "triggering mechanism" for analysis of the remaining
Barker factors. Munoz, 991 S.W.2d at 821. Further analysis is required if the length
of the delay is "presumptively prejudicial." Id. at 821-22. Presumptive prejudice is
determined from the circumstances of the case. See Barker, 407 U.S. at 530-31;
Schenekl v. State, 996 S.W.2d 305, 312 (Tex. App.-Fort Worth 1999), aff'd,
30 S.W.3d 412 (Tex. Crim. App. 2000). The length of the delay is measured from the
time of arrest until the time of trial. Schenekl, 996 S.W.2d at 312 (citing Emery v.
State, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994)). Most delays of eight months
or longer are considered presumptively unreasonable and prejudicial. Doggett v. United
States, 505 U.S. 647, 651 (1992); see Schenekl, 996 S.W.2d at 312; Pierce v. State,
921 S.W.2d 291, 294 (Tex. App.-Corpus Christi 1996, no pet.). "[T]he delay that
can be tolerated for an ordinary street crime is considerably less than for a serious,
complex conspiracy charge." Barker, 407 U.S. at 531. The delay factor requires a
two-prong inquiry. Munoz, 991 S.W.2d at 822. First, any speedy trial analysis
depends on whether the delay is more than "ordinary." Zamorano, 84 S.W.3d at 648. 
Second, the longer the delay extends beyond "ordinary," the more prejudicial that
delay is to the accused. Id. 

b. Reason for the Delay


 The primary burden for assuring cases are promptly brought to trial lies with
prosecutors and the courts. Barker, 407 U.S. at 530. The accused has the initial
burden of showing sufficient delay has occurred to require application of the Barker
balancing test. Moreno, 987 S.W.2d at 198. After the accused meets this burden of
production, the burden shifts to the State to justify the delay. In the absence of an
assigned reason for the delay, we presume neither a deliberate attempt on the part of
the State to prejudice the defense nor a valid reason for the delay. Dragoo v. State,
96 S.W.3d 308, 314 (Tex. Crim. App. 2003). If the State provides a reason for the
delay, the burden shifts back to the accused to show diligent assertion of the right to
a speedy trial and prejudice resulting from the delay. Moreno, 987 S.W.2d at 198. 

 We assign different weight to different reasons. Zamorano, 84 S.W.3d at 649. 
A deliberate attempt to delay the trial to hamper the defense weighs heavily against
the State. Id.; Moreno, 987 S.W.2d at 199. A finding of "bad-faith delay" renders
relief almost automatic. Zamorano, 84 S.W.3d at 649. Mere negligence is not
"'automatically tolerable simply because the accused cannot demonstrate exactly how
it has prejudiced'" the defense. Id. (quoting Doggett, 505 U.S. at 656-57). A more
neutral reason, such as negligence or overcrowded court dockets, weighs less heavily
but is considered nevertheless. Zamorano, 84 S.W.3d at 649. The State's 
negligence, however innocent, militates against the State. Id. Similarly, the ultimate
responsibility for docketing delays rests with the State, not with the accused. Id. 

 c. Assertion of the Right to Speedy Trial


 The third factor to consider is whether the accused asserted the right to a
speedy trial. We give this factor "strong evidentiary weight." See Barker, 407 U.S.
at 531; Haney v. State, 977 S.W.2d 638, 642 (Tex. App.-Fort Worth 1998, pet.
ref'd). Failure to assert the right makes it difficult for an accused to prove the denial
of a speedy trial. Schenekl, 996 S.W.2d at 313. Further, if an accused asserts the
speedy trial right but requests a dismissal instead of a trial, the claim is attenuated. 
Id. Similarly, a failure to assert the right in a timely and persistent manner suggests
that the accused did not really want a speedy trial. See Moreno, 987 S.W.2d at 200. 
Failure to assert or lack of persistence in pursuing a speedy trial weighs against the
accused. See Sinclair v. State, 894 S.W.2d 437, 440 (Tex. App.-Austin 1995, no
pet.) (per curiam). Furthermore, "the longer delay becomes, the more likely a
defendant who wished a speedy trial would be to take some action to obtain it. Thus
inaction weighs more heavily against a violation the longer the delay becomes." 
Dragoo, 96 S.W.3d at 314 (quoting G. Dix & R. Dawson, Texas Criminal Practice and
Procedure, § 23.40 (2d ed. 2001)). However, the fact that one resetting is
attributable to the accused's conduct is not dispositive of the speedy trial issue. See
Zamorano, 84 S.W.3d at 650 & n.31. 

d. Prejudice


 The final factor to consider is whether the delay prejudiced the accused. Barker,
407 U.S. at 532. We assess prejudice in light of the interests a speedy trial is
designed to protect. Id. The right to a speedy trial was designed to prevent:
(1) oppressive pretrial incarceration; (2) anxiety over the pending charges; and
(3) impairment of an accused's ability to present a defense. Id.; Harris,
827 S.W.2d at 957; Schenekl, 996 S.W.2d at 313. The burden is on the accused to
make a prima facie showing of prejudice. Schenekl, 996 S.W.2d at 313. Only "some
showing" of prejudice, not "actual prejudice," is required. Munoz, 991 S.W.2d at 826
(citing Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973)). Once the
accused makes a "prima facie showing of prejudice," the burden shifts to the State to
prove "'that the accused suffered no serious prejudice beyond that which ensued from
the ordinary and inevitable delay.'" Munoz, 991 S.W.2d at 826 (quoting Ex parte
McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). 

 The inability of an accused adequately to prepare and present a defense "skews
the fairness of the entire system." Barker, 407 U.S. at 532. Accordingly, we weigh
the effect of delay on the accused's defense just as we weigh any other form of
prejudice recognized by Barker. Pierce, 921 S.W.2d at 295. Excessive delay
presumptively compromises the reliability of a trial in ways that neither party can prove
or, for that matter, identify. Id. Thus, under certain circumstances, the State's
egregious persistence in failing to prosecute the accused is sufficient to warrant relief
even without a showing of actual prejudice. Id. 

 Accordingly, in the absence of proof of actual prejudice, presumptive prejudice
may, in proper combination with the other Barker factors, carry an accused's Sixth
Amendment claim. Id. When the government's negligence causes delay and when
presumed prejudice is uncontroverted, the accused should be afforded relief on speedy
trial grounds. Id. at 296. Presumptive prejudice is "part of the mix of relevant facts,
and its importance increases with the length of delay." Dragoo, 96 S.W.3d at 315
(quoting Doggett, 505 U.S. at 655). If the presumptive prejudice is neither
extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the
defendant is entitled to relief. Doggett, 505 U.S. at 658. 

C. Application of the Law to the Facts


1. Analyzing the Factors


a. Length of Delay


 The facts underlying the "length of delay" factor here are undisputed. 
Therefore, we review the trial court's application of the law to those facts de novo. 
See Moreno, 987 S.W.2d at 199. This case is a "plain-vanilla," single-defendant drug
possession case. We find that on the facts of this case, the seventeen-month delay
is more than "ordinary." See Zamorano, 84 S.W.3d at 648. Further, the delay
extended more than twice as long as the eight-month delay generally viewed as
presumptively unreasonable. See id.; see also Harris, 827 S.W.2d at 956. We find
that the seventeen-month delay weighs against the State and triggers further analysis
of the Barker factors. See Zamorano, 84 S.W.3d at 648. 

b. Reason for the Delay


 Because of disputes in the reasons for the delay in this case, we apply an abuse-of-discretion standard to this factor. See Moreno, 987 S.W.2d at 200. Kelly argues
that the reason for the delay was the State's laxity in obtaining a laboratory analysis
of the seized substance. The analysis was critical, Kelly insists, because the State had
"overcharged" him with possession of an amount far in excess of what he had a good-faith reason to believe the analysis would determine. The State responds that it could
have expedited the laboratory analysis if the results had been required for a trial
setting. The State did not explain why it did not do so after Kelly filed a motion on
September 21, 2001 putting the State on notice that the amount of the contraband
was in controversy. By the prosecutor's own testimony, the State could have
expedited the analysis had the State thought it important enough to do so. In any
event, the absence of laboratory results only accounts for the delay from May through
December of 2001. It does not account for the delay from January to October of
2002. 

 The State argues that the delay should not weigh against the State because the
trial court was responsible for setting cases on the docket. The record belies the
State's argument in this regard. The district clerk testified that she set cases carried
on the docket at the State's request. The case was initially set for trial on the very
date requested by the State. Further, the State did not explain why it waited until
June of 2002 to request a trial setting. 

 The State also points out that it sought a continuance of the July 29, 2002 trial
setting because a State's witness was required to complete training before
September 1 and was unavailable on that date. Assuming without deciding that a
witness's training requirements constitute valid grounds for a continuance of a criminal
trial, the State's explanation does not account for either the State's failure to ask for
a trial setting during the months preceding the witness's training deadline or the delay
that occurred after the training completion had date passed. Nor did the State provide
any explanation for the delay of the case for eight months after the companion
probation revocation was resolved in February of 2002. 

 The trial court did not make findings of fact. We conclude, however, that the
record does not support a balancing of the reasons for the delay in the State's favor. 
See Sinclair, 894 S.W.2d at 440. Accordingly, given the seventeen-month delay, the
"plain-vanilla" character of this prosecution for simple drug possession, and the State's
awareness that the amount of contraband was in controversy, we find that the State
was negligent in not obtaining a laboratory analysis of the seized substance before
December of 2001. Further, given the same circumstances as well as resolution of
the companion probation revocation in February of 2002, we find that the State was
negligent in not requesting a trial setting before July of 2002. We find that the second
Barker factor weighs heavily against the State. 

c. Assertion of the Right to Speedy Trial


 The facts underlying Kelly's assertion of the right to a speedy trial are
undisputed. Therefore, we review de novo the trial court's application of the law to
those facts. See Moreno, 987 S.W.2d at 199. We find that Kelly's failure to oppose
the State's motion for continuance of the July 29, 2002 trial setting is the equivalent
of the single "not ready" announcement attributable to the appellant in Zamorano. See
Zamorano, 84 S.W.3d at 651. Moreover, Kelly asserted his right to a speedy trial four
days after the continued setting, on August 2, 2002. Similarly, we do not find
dispositive Kelly's request for dismissal rather than for an immediate trial setting. See
id. We find that the third Barker factor weighs against the State. 

d. Prejudice


 We also review this factor de novo because the State did not refute the facts
asserted by Kelly with regard to the prejudice the delay caused him. See Moreno,
987 S.W.2d at 201. The State contends, however, that Kelly failed to show he
suffered any prejudice from the delay. See id. We agree with the State that prejudice
was mitigated by the fact that Kelly was free on bail. Also, he did not prove any
specific prejudice in the preparation or presentation of his defense, such as an inability
to locate witnesses or the loss of vital evidence. However, Kelly testified to an
inability to find work because of the time commitments imposed by the necessity of
court appearances. He said that the severity of the second-degree felony charged by
the State worried him. Accordingly, we find that the fourth Barker factor weighs in
Kelly's favor. 

 Having weighed the four Barker factors, we now must balance them. See
Dragoo, 96 S.W.3d at 316. In reviewing de novo the trial court's balancing of the
factors, we find it instructive to compare this case to the court of criminal appeals'
two most recent speedy trial decisions. See Dragoo, 96 S.W.3d at 316; see also
Zamorano, 84 S.W.3d at 649. 

2. Balancing the Factors


 In Dragoo, the court of criminal appeals held that the length of the delay
between the appellant's felony arrest and the trial (three-and-a-half years) met the
appellant's burden in the first factor of the Barker test and triggered further
examination of the speedy trial issue. Dragoo, 96 S.W.3d at 314. The court looked
further and found that the State offered the trial court no justification for the delay. 
Id. Therefore, the second factor also weighed against the State, but not heavily. Id. 
Then, the court found against the appellant on the third factor, holding that he had
failed to assert his speedy trial right for three-and-a-half years, until just before trial. 
Id. at 314-15. Finally, the court held that the appellant had not proved the final Barker
element of prejudice. Id. at 315. The court noted that the appellant was serving a life
prison sentence for murder during most of the time in question. Id. The court also
found that the appellant had made no showing to the trial court that his ability to
prepare and present his defense was prejudiced. Id. Significantly, the court also
concluded that the presumption of prejudice that resulted from the lengthy delay was
"extenuated by appellant's longtime acquiescence in the delay." Id. 

 In Zamorano, the court of criminal appeals held that the length of the delay
between the appellant's misdemeanor arrest for driving while intoxicated and a hearing
on his speedy trial motion (two years and ten months) as well as the length of time
between his arrest and the trial (nearly four years) met the appellant's burden in the
first factor of the Barker test and triggered further examination of the speedy trial
issue. Zamorano, 84 S.W.3d at 649. The court looked further and found that the
State offered no justification for the delay in trying the case, a relatively simple DWI
prosecution, particularly for the additional delay after the accused had asserted the
right to a speedy trial. Id. at 650. The court noted that the record did indicate some
reason for the delay in docket notations that suggested that the State sought to
transfer the case to another court where a Spanish-language prosecutor was available
to assist in the State's review of the accused's videotape. Id. Given the trial court's
location in San Antonio, the court of criminal appeals found the State negligent in
delaying the case for lack of a Spanish-language translator, particularly for the
additional six-month delay after the case was transferred to the other court. 
Id. at 651. Therefore, the second factor weighed against the State, but not heavily
or lightly. Id. at 650-51. Then, the court also found against the State on the third
factor, finding that the appellant had asserted his speedy trial right two-and-a-half
years after his arrest. Id. at 652. The court did not consider dispositive the fact that
the appellant had sought dismissal, not an immediate trial. Id. at 651. The court
considered it significant that the appellant had re-asserted his motion to dismiss after
it was initially denied by the trial court. Id. at 651-52. Finally, the court held that the
State did not rebut the appellant's proof of the final Barker element of prejudice. Id.
at 654. The court noted that the appellant was on bail pending his trial and never
claimed that his defense was specifically impaired. Id. at 652. Instead, the court
focused on the appellant's uncontradicted testimony at the speedy trial hearing of
direct economic loss in the form of lost work for repeated court appearances and
reporting to his bail bondsman and of his anxiety regarding the pending case. Id.
at 654. Significantly, the court concluded that "the sword of Damocles weighs no
less merely because the source of anxiety is appellant's fear of conviction and the
resultant as-yet-unknown punishment." Id. 

 We conclude that this case is less like Dragoo and more like Zamorano. This
state jail drug possession prosecution may have been of little moment to the State, but
it mattered greatly to Kelly. See Zamorano, 84 S.W.3d at 655. We find that Kelly's
constitutional right to a speedy trial was violated. See id. We hold that the trial court
erred by failing to grant Kelly's motion to dismiss. See id. No harmless-error analysis
is required. See Brecheisen, 4 S.W.3d at 765. We sustain Kelly's third issue. 

V. CONCLUSION


 Having sustained Kelly's speedy trial issue, we do not reach his other issues. 
See Tex. R. App. P. 47.1. We reverse the judgment of the trial court. We remand the
case to the trial court with directions to dismiss the prosecution of this case. See
Zamorano, 84 S.W.3d at 655; see also Brecheisen, 4 S.W.3d at 765. 

 ERRLINDA CASTILLO

 Justice

Publish.

Tex. R. App. P. 47.2(b).

Opinion delivered and filed

this 21st day of August, 2003.
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court
of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).
2. The probation revocation is also on appeal as Case No. 13-02-00132-CR, Kelly v. State of
Texas. The State stipulated that the evidence is the same in both cases. At the plea hearing in this
case, the State agreed to dismiss this case if denial of the suppression motion in the companion case
is reversed. The trial court ordered Kelly's community supervision in this case to begin on his release
from the five-year term of imprisonment imposed in the companion case. 
3. See Tex. Pen. Code Ann. art. 12.33 (Vernon 2003) (providing for imprisonment in the
Institutional Division of the Texas Department of Criminal Justice for any term of not more than twenty
years or less than two years). 
4. See Tex. Pen. Code Ann. art. 12.35 (Vernon 2003) (providing for confinement in a state jail
for any term not more than two years or less than one hundred eighty days).