NUMBER 13-04-585-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


THE STATE OF TEXAS, Appellant,


v.


 

ROLANDO PEÑA, Appellee.

 


On appeal from the 347th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Hinojosa, Yañez, and Garza


Memorandum Opinion by Justice Yañez
 

 This is an appeal by the State from the trial court's dismissal of its case (1) against
appellee, Rolando Peña, for felony driving while intoxicated ("DWI"), (2) based on a violation
of his right to a speedy trial. In two issues, the State contends the trial court erred in (1)
conducting a speedy-trial analysis because the length of delay should have been
measured from Peña's indictment for felony DWI (less than six months) instead of from his
arrest for misdemeanor DWI, and (2) applying the four-factor balancing test set forth in
Barker v. Wingo. (3) We affirm.

I. Background

 On May 3, 2003, Peña was arrested for misdemeanor DWI. (4) According to Peña,
he posted bond the same day he was arrested. (5) In mid-December 2003, the State
received a certified copy of a judgment reflecting that Peña had a prior DWI conviction in
Nueces County. (6) The Nueces County conviction reflected that Peña also had an earlier
DWI conviction in San Patricio County. Shortly thereafter, the State requested a certified
copy of Peña's DWI conviction in San Patricio County. After receiving certified copies of
Peña's two prior DWI convictions, the State contends that it "informally dismissed" the
misdemeanor DWI charge on January 30, 2004, and charged Peña with felony DWI. A
grand jury indicted Peña for felony DWI on March 4, 2004. On June 30, 2004, Peña
waived arraignment on the felony DWI charge and on July 1, 2004, he was granted bond
with certain pre-trial conditions. (7) Trial was set for August 30, 2004. 

 On April 2, 2004, Peña's counsel filed a motion to dismiss on grounds that his right
to a speedy trial had been violated. The trial court held hearings on the motion on August 
20, 2004 and September 1, 2004. At the conclusion of the September 1, 2004 hearing,
the trial court orally granted Peña's motion to dismiss on speedy trial grounds. The order
granting the dismissal was signed by the trial court on November 1, 2004.

II. Standard of Review and Applicable Law 

 In reviewing a trial court's ruling on a defendant's speedy trial claim, we apply a
bifurcated standard of review: an abuse of discretion standard for the factual components
and a de novo standard for the legal components. (8) This means we independently weigh
and balance the Barker factors, but we presume the trial court resolved any disputed fact
issues in a manner that supports its ruling. (9) Stated differently, we review legal issues de
novo but give deference to a trial court's resolution of factual issues, including deference
to the trial court's drawing of reasonable inferences from the facts. (10)

 The right to a speedy trial is guaranteed by the United States and Texas
constitutions. (11) The test under both the federal and state constitutions is the same. (12) In
reviewing a trial court's decision to grant or deny a speedy trial claim, we must balance four
factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion
of his/her right, and (4) any resulting prejudice to the defendant. (13) No single factor is
necessary or sufficient to establish a violation of the right to a speedy trial. (14) Thus, we
must "engage in a difficult and sensitive balancing process" in each individual case. (15) 

III. Analysis


A. Length of Delay


 In its first issue, the State contends the trial court erred in measuring the length of
delay from Peña's arrest for misdemeanor DWI on May 3, 2003, instead of from his
indictment for felony DWI on March 4, 2004. The State argues that because the offense
for which Peña was arrested (misdemeanor DWI) was informally dismissed, and he was
later indicted on a different offense (felony DWI), the length of delay should be measured
from his March 4, 2004 indictment on felony DWI. Peña contends his right to a speedy trial
attached on May 3, 2003, when he was arrested for misdemeanor DWI.

 We agree with the State that felony DWI and misdemeanor DWI are separate
offenses. (16) The clock begins to run for purposes of speedy trial analysis when the
defendant has either been charged or arrested. (17) The State urges us to measure the delay
from Peña's March 4, 2004 indictment because the misdemeanor DWI was informally
dismissed on January 30, 2004. We note that Peña's counsel also told the court that Peña
had been arrested twice and was required to post bond twice on the case; presumably, the
second arrest and bond pertained to his arrest for felony DWI, the charged offense.

 However, the record does not confirm the State's assertion that the misdemeanor
charge was informally dismissed. There is no documentation showing a separate
subsequent arrest date for felony DWI. In fact, Peña's indictment for felony DWI reflects
a notation at the top of the page stating, "Date of arrest: 05-03-03." We also note that the
trial court clearly measured the length of delay from Peña's May 3, 2003 arrest. (18) As the
appellant, the State had the burden of providing a record establishing that the trial court
erred in measuring the delay from Peña's May 3, 2003 arrest date. (19) We conclude that the
State failed to establish that the length of delay should be measured from Peña's
indictment for felony DWI rather than from his arrest for misdemeanor DWI. We overrule
the State's first issue. 

 The length of the delay is a "triggering mechanism" for analysis of the remaining
Barker factors. (20) Further analysis is required if the length of the delay is "presumptively
prejudicial." (21) Presumptive prejudice is determined from the circumstances of the case. (22)
The length of the delay is measured from the time of arrest until the time of trial. (23) Most
delays of eight months or longer are considered presumptively unreasonable and
prejudicial. (24) "The delay that can be tolerated for an ordinary street crime is considerably
less than for a serious, complex conspiracy charge." (25) The delay factor requires a
two-prong inquiry. (26) First, any speedy trial analysis depends on whether the delay is more
than "ordinary." (27) Second, the longer the delay extends beyond "ordinary," the more
prejudicial that delay is to the accused. (28) 

 Here, the delay from Peña's May 3, 2003 arrest on misdemeanor DWI to his trial
date of August 30, 2004, was approximately sixteen months and is presumptively
prejudicial. (29) We conclude that this factor weighs in favor of Peña, and thus triggers further
analysis of the remaining factors. 

B. The Reason for the Delay


 Once a delay has been found to be presumptively prejudicial, the State bears the
burden of justifying the delay. (30) In examining the reasons for the delay, different weights
should be assigned to different reasons. (31) A deliberate attempt to delay the trial in order
to hamper the defense should be weighed heavily against the State. (32) However, valid
reasons are not weighed against the State at all. (33) When the record is silent as to the
reason for the delay, we may presume neither a valid reason nor a deliberate attempt to
prejudice the defendant. (34) Therefore, when the record is silent, the second Barker factor
weighs against the State, but not heavily. (35)

 Here, the State argued that the reason for the delay was the need to investigate
Peña's prior DWI convictions and obtain certified copies of his prior convictions. According
to the State, once it became aware of Peña's two prior convictions, it dismissed the
misdemeanor DWI charge against him. However, when the trial court questioned why it
took from May 2003 to December 2003 to obtain Peña's Nueces County conviction (which
then triggered the request for records from San Patricio County), the State did not have an
adequate response. (36) We conclude that the trial court could reasonably infer from the
facts presented that the delay was due to lack of diligence on the part of the State. (37) 
"Where there are two permissible views of the evidence, the factfinder's choice between
them cannot be clearly erroneous. This is so even when the district court's findings do not
rest on credibility determinations, but are based instead on physical or documentary
evidence or inferences from other facts." (38) We conclude that this factor weighs against the
State. (39) 

C. Assertion of the Right
 

 Peña filed a motion to dismiss on speedy trial grounds on April 2, 2004,
approximately one month after his indictment for felony DWI. Peña's motion does not
demand a speedy trial. Although a motion to dismiss may notify the State and the court
of a speedy trial claim, a defendant's motivation in asking for dismissal rather than for a
speedy trial is relevant and may attenuate the strength of the speedy trial claim. (40) The
record reflects that at the hearings on Peña's motion to dismiss, counsel did not request
a speedy trial. However, the record also reflects that the trial court did not consider Peña's
request for a dismissal rather than a speedy trial as "dispositive," but rather, as "just one
thing to consider" "in the overall balancing of the factors." We conclude that this factor
weighs slightly against Peña. 

D. Prejudice Caused by the Delay


 The final Barker factor takes into account any prejudice suffered by the defendant
as a result of the delay. (41) The prejudice to the defendant is assessed in light of the
interests which the speedy trial right is designed to protect. (42) Those interests are: (1)
preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the
accused; and (3) limiting the possibility that the defense will be impaired. (43) Of the three
interests, the most important is the last, because the inability of a defendant adequately
to prepare his case skews the fairness of the entire system. (44) A mere passage of time is
not prejudicial and will not result in a denial of speedy trial. (45) When non-availability of
witnesses is the basis of the alleged prejudice, an appellant must demonstrate that the
witnesses were unavailable at the time he was tried, that their testimony may be relevant
and material to his defense, and that due diligence was exercised in an attempt to locate
such witnesses at the time he was tried. (46) The defendant has the initial burden of showing
that he was prejudiced by trial delay. (47)

 As to the first sub-factor, Peña does not argue that he was oppressively
incarcerated. He testified that he was released on bond the day he was arrested. Thus,
this sub-factor weighs in favor of the State.

 With regard to the undue anxiety sub-factor, appellant testified that (1) he was
"worried about going to prison;" (2) that his pre-trial conditions required him to report to his
pre-trial service officer once a month, which requires him to miss about three hours of work
per month; (3) that he must pay a monthly service fee of around $62.75 for inspection of
his ignition interlock device; and (4) that he must pay a $40.00 monthly fee to his pre-trial
supervision officer. Peña's pre-trial bond conditions were imposed on July 1, 2004. Thus,
as of the August 20, 2004 hearing, Peña had only been required to report to his pre-trial
supervision officer once. We conclude Peña presented no evidence that the delay caused
him anxiety and concern beyond what would ordinarily result from being arrested and
charged with a serious offense. (48) We weigh this second sub-factor in favor of the State.

 We next consider the most important sub-factor, the possibility of a delay impairing
the defense. Peña did not develop a case with regard to impairment of his ability to
present a defense. The State advised the trial court that a civil case was pending
regarding the DWI incident and that all witnesses were available. The trial court noted that 
with regard to the third sub-factor, the "witnesses are available," and as to "any limit or
impairment of the defense," the court did not "think we have evidence of that here." 
Considering all these matters, we cannot conclude that Peña's defense was impaired. 
Accordingly, the final Barker factor weighs against Peña. 

IV. Conclusion 


 In balancing the Barker factors, we conclude that the first and second factors weigh
against the State, and the last two factors weigh against Peña. We note that we must
remain mindful that a "trial judge's personal knowledge of the parties and the sequence of
events do in fact place him in a better position to draw inferences than an appellate court
without such familiarity." (49) We conclude that, after giving due deference to the findings of
the trial court, the balancing of the various factors as called for in Barker weighs in favor
of Peña's claim that he was denied a speedy trial. Accordingly, we overrule the State's
second issue and affirm the trial court's judgment. 


 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).

Memorandum opinion delivered and filed 

this the 5th day of October, 2006. 
1. See Tex. Code Crim. Proc. Ann. art. 44.01(a)(1) (Vernon Supp. 2006) (authorizing appeal by the
State from the dismissal of an indictment).
2. See Tex. Pen. Code Ann. § 49.09(b)(2) (Vernon Supp. 2006).
3. See Barker v. Wingo, 407 U.S. 514, 530 (1972).
4. See Tex. Pen. Code Ann. § 49.04 (Vernon 2003). 
5. At an August 20, 2004 hearing on his motion to dismiss for a speedy trial violation, Peña testified
that he was arrested and posted bond on May 5, 2003. The record before us contains no documents
pertaining to Peña's arrest for misdemeanor DWI.
6. The prosecutor explained the sequence of events to the trial court. Again, the record does not
contain copies of Peña's prior convictions or any requests from the State requesting such documentation. 
7. Peña's counsel told the court that the original bond posted by Peña "got lost" and that he was
required to post a second bond for the felony DWI. 
8. Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). 
9. See id; State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).
10. Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).
11. See U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10.; Zamorano, 84 S.W.3d at 647.
12. Floyd v. State, 959 S.W.2d 706, 709 (Tex. App.-Fort Worth 1998, no pet.) (citing Hull v. State, 699
S.W.2d 220, 221 (Tex. Crim. App. 1985)). 
13. Zamorano, 84 S.W.3d at 648 (citing Barker, 407 U.S. at 530).
14. Id. (citing Barker, 407 U.S. at 533).
15. Id. 
16. See Strickland v. State, 193 S.W.3d 662, 665 (Tex. App.-Fort Worth 2006, no pet.) (citing Luedke
v.State, 711 S.W.2d 657, 659 (Tex. Crim. App. 1986) (recognizing that felony and misdemeanor DWI are
separate offenses because "[a] prior conviction is an essential element of felony driving while intoxicated," but
"it is not an element of the misdemeanor offense.")). 
17. Emery v. State, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994).
18. At one point, the trial court noted, "I have a problem with he was arrested in May and we did not
indict until March is the period I am looking at."
19. See State v. Gonzalez, 855 S.W.2d 692, 695 (Tex. Crim. App. 1993).
20. Munoz, 991 S.W.2d at 821. 
21. Id. at 821-22. 
22. See Barker, 407 U.S. at 530-31; Schenekl v. State, 996 S.W.2d 305, 312 (Tex. App.-Fort Worth
1999), aff'd, 30 S.W.3d 412 (Tex. Crim. App. 2000). 
23. Schenekl, 996 S.W.2d at 312 (citing Emery, 881 S.W.2d at 708).
24. Id. (citing Doggett v. United States, 505 U.S. 647, 651 (1992); Pierce v. State, 921 S.W.2d 291, 294
(Tex. App.-Corpus Christi 1996, no pet.). 
25. Barker, 407 U.S. at 531. 
26. Munoz, 991 S.W.2d at 822. 
27. Zamorano, 84 S.W.3d at 649. 
28. Id.
29. See Schenekl, 996 S.W.2d at 312.
30. Emery, 881 S.W.2d at 708. 
31. Id. 
32. Id. 
33. Id. 
34. Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).
35. Id.
36. The record of the August 20, 2004 hearing reflects the following:


[Trial court]: Okay. But why are we just getting a Nueces County deal in December when
he has been arrested in May.


[State]: I'm sorry. I can't answer for the clerk. 
37. In response to the State's argument that it was in Peña's interest for it to investigate his two prior
convictions because if either conviction was defective, Peña could not have been charged with felony DWI,
the trial court responded, "[y]eah, but the state waited from May to December to even send out any letters to
other counties, adjacent counties, requesting information." 
38. Kelly, 163 S.W.3d at 726 (emphasis in original).
39. See Munoz, 991 S.W.2d at 822 (noting that "more neutral reasons," such as negligence, should
be weighed against the government, but less heavily).
40. See Zamorano, 84 S.W.3d at 651 n.40; Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App.
1983); Marquez v. State, 165 S.W.3d 741, 749 (Tex. App.-San Antonio 2005, pet. ref'd) (concluding that when
appellant filed a motion to dismiss two months after indictment, rather than request for speedy trial, it weighed
slightly against him). 
41. See Dragoo, 96 S.W.3d at 316. 
42. Id. 
43. Id. 
44. Id. (citing Barker, 407 U.S. at 532); Zamorano, 84 S.W.3d at 652.
45. Johnson v. State, 975 S.W.2d 644, 651 (Tex. App.-El Paso 1998, pet. ref'd). 
46. See id. at 652. 
47. Ramirez v. State, 897 S.W.2d 428, 433 (Tex. App.-El Paso 1995, no pet.). 
48. See Shaw v. State, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (noting no evidence that delay
caused any unusual anxiety or concern, i.e., any anxiety or concern beyond the level normally associated with
being charged with a felony).
49. Kelly, 163 S.W.3d at 726-27.