NUMBER 13-04-226-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

 

IN THE MATTER OF J.M., III, A CHILD

 

 

 

                  On appeal from the 92nd
District Court

                           of Hidalgo
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

                Before Justices Yañez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








A jury found that
appellant J.M., III, a juvenile, engaged in delinquent conduct by committing
the offense of escape.[1]
 See Tex. Pen. Code Ann.
_ 38.06 (Vernon 2003).  The trial court entered a judgment of
adjudication and disposition, incorporating the jury verdict and committing him
to the Texas Youth Commission.  By four
issues, J.M. argues (1) the evidence is legally and factually insufficient, and
(2) the trial court should have dismissed the case on speedy trial and double
jeopardy grounds.  We affirm.

I.  BACKGROUND

The jury heard that
J.M. ran to the perimeter fence of the Texas Youth Commission's Joe B. Evins
Regional Juvenile Center, accompanied by three juvenile inmates, around 6:45
a.m. on September 29, 2003.  Pursued by
two correctional officers, the youths proceeded through a cut in the fence that
was marked with a plastic container. 
J.M. and one of the other juveniles fled the scene in a white Suburban
that was waiting for them.  The other two
juveniles were apprehended by the pursuing officers.  The following day, J.M. was arrested and
returned to the custody of the Texas
Youth Commission.  

II. 
SUFFICIENCY

By his first and second issues, J.M. asserts that
the evidence was legally and factually insufficient to prove he was in custody
pursuant to a lawful order.  The State
counters that the evidence is sufficient. 

A.  Standards
of Review








In the adjudication phase of a juvenile case, the
criminal legal and factual sufficiency standards of review are employed.  In re J.D.P., 85 S.W.3d 420, 422 (Tex.
App.BForth Worth 2002, no pet.).  A legal sufficiency challenge calls on us to
review the relevant evidence in the light most favorable to the verdict to
determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Escamilla  v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004).  

In determining the factual sufficiency of the
elements of the offense, we view all the evidence neutrally, not through the
prism of "the light most favorable to the prosecution."  Zuniga v. State, 144 S.W.3d 477, 484‑85
(Tex. Crim. App. 2004).[2]   However, we approach a factual‑sufficiency
review with appropriate deference, to avoid substituting our judgment for that
of the fact finder.  Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim App. 2000) (en banc). 









The sufficiency of the evidence is measured against
the elements of the offense as defined by a hypothetically correct jury charge
for the case.  See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124,
131 (Tex. App.BCorpus Christi 2002, pet. ref'd).[3]  The conviction will be upheld if the evidence
is sufficient to support a finding of guilt under any one of the theories
submitted.  Tex. Code Crim. Proc. Ann. art. 37.07 ' 1(a) (Vernon Supp. 2004-05) (verdict must be
general); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)
(en banc).  

B.  The
Elements of the Offense of Escape 

The hypothetically correct jury charge in this case
would ask the jury if J.M. (1) on or about September 30, 2003, (2)
intentionally and knowingly escaped (3) from 
custody (4) when he was in custody pursuant to a lawful order of a
court.  See Tex. Pen. Code Ann. _ 38.06(a)(2) (Vernon 2003).  J.M.'s sufficiency argument on appeal focuses
on the element of "pursuant to a lawful order of a court."  We turn to the record evidence. 

C. 
Sufficiency Analysis

1.  The Record








Bill Roach testified he was the superintendent of
the Evins Regional Juvenile Center of the Texas Youth Commission, a center for
the rehabilitation and correction of, at that time, approximately two hundred
forty male juveniles.  The layout of the
facility includes a "candy cane fence" designed for "secure
institutions."[4]  The purpose of the fence is to "keep
people inside the facility."  No one
"should be leaving the facility," he testified.  A person who leaves the facility is
considered "an escapee."  He
identified J.M. as a youth "committed" at Evins.  He learned that, on September 29, 2003, J.M.
and three juveniles escaped the facility. 
The fence had been cut vertically three or four feet, and the location
of the cut had been marked by a plastic jug. 
Roach concluded that "there had been outside assistance to cut the
fence."  He did not give consent to
J.M. to leave the secure facility.  

The jury heard from two correctional officers who
testified that they maintained security of the unit and monitored
"inmates" in a "secured correctional facility."[5]
Correctional officer Marcos Hurtado testified he observed J.M. and three other
juveniles leave the grounds through the cut fence.  He pursued the juveniles.  J.M. and another juvenile fled in a white
Suburban.  During cross-examination,
Hurtado testified:

Q:  Okay.  You didn't see any inmates, any students, if
you willByou typically call them students there atB

 

A:  Yes.

 

Q:  BT.Y.C., correct?

 

A:  Yes, sir.








Q:  You don't
call them like prison inmates?

 

A:  No, sir.

 

Correctional officer Richard Silva testified that
Evins is a "secure facility for juveniles."  One of his duties was "to make sure
nobody escapes."  He described how
the juveniles are closely monitored at all times for their safety and to
prevent escape.[6]   On cross-examination, Silva testified:

Q:  Okay.  Now, you had indicated earlier that you had
like a call outB trouble?

 

A:  Yeah,
10-98 is a fleeing escapee.

 

Q:  Inmates
were fleeing?

 

A:  Yes. 

 

Police officer Rene Hernandez testified that on
September 30, 2003, he attempted to stop and then engaged in a vehicle pursuit
after a vehicle reported to contain the escaped juveniles.  With the assistance of another police
officer, officer Hernandez stopped the vehicle. 
Two young males exited the vehicle and fled the scene.  The two, including J.M., were apprehended and
arrested.  

Alma Ozuna testified she was J.M.'s probation
officer on October 1, 2001.  On that day,
she attended court because J.M.'s then-pending case was on the docket.  The disposition of the case resulted in
J.M.'s commitment to the care, custody, and control of the Texas Youth
Commission.  During direct examination,
Ozuna testified:








Q:  Okay.  And, at that point, that was October the 1st
and was there a documentBthat you reviewed with him?

 

A:  Yes, there
was.  There was a judgment.

 

Q:  Okay.  And did you explain to him that that judgment
was going to commit him to the Texas Youth Commission?

 

A:  Yes, I
did.

 

Q:  And you
went over it with him?

 

A:  Yes, I
did.

 

Q:  Was that
document signed by a judge?

 

A:  Yes, it
was.

 

Q:  Okay.  And wasBthere also was a fingerprint attached to that
document?

 

A:  Yes, there
was.

 

Q:  Was he
then transported from the Detention Center to the Texas Youth Commission?

 

A:  He was
transported fromBfrom cut to Detention and waited forBto be picked up. 
He was picked up by T.Y.C. . . . . 
He was actually transferred to T.Y.C. 


 

During cross-examination, Ozuna testified she did
not know how long J.M. was at the Texas Youth Commission.

2. 
Disposition








Viewed in the light most favorable to the verdict
and measured against a hypothetically correct jury charge for the offense of
escape, the evidence shows that J.M. was in the Evins Regional Juvenile Center,
a secured correctional facility for male juveniles as an
"inmate."  J.M.'s probation
officer testified that she reviewed a trial court judgment committing J.M. to
the Texas Youth Commission with him on October 1, 2003, the date the judgment
was entered.  J.M. was transported to the
Texas Youth Commission.  The
superintendent of the Evins facility testified that J.M. was committed to the
unit, and he did not give permission to J.M. to leave.  We conclude that the evidence, viewed in the
proper light, is legally sufficient to prove the element of "custody
pursuant to a lawful order of a court." 
See Tex. Pen. Code Ann.  _38.06(a)(2) (Vernon 2003); Jackson, 443 U.S.
at 319; Escamilla, 143 S.W.3d at 817. 
We overrule J.M.'s first issue.

J.M. also argues that the record does not contain a
judgment and order of commitment, and, thus, the evidence is factually
insufficient to prove the complained of element.[7]  Viewed in a neutral light, favoring neither
the prosecution nor the defense, and measured against the hypothetically
correct jury charge, the evidence shows that J.M. affixed his fingerprint on a
judgment explained to him to be a judgment of commitment to the Texas Youth
Commission and, pursuant to that judgment, he was committed to the secured
correctional facility as an "inmate." 
We conclude that the evidence supporting the verdict or judgment, considered by itself, is not too weak to support the finding of guilt
beyond a reasonable doubt.  Zuniga, 144 S.W.3d at 484‑85.  Thus, we conclude the evidence is factually
sufficient.  We overrule J.M.'s second
issue.








III.  SPEEDY
TRIAL

By his third issue, J.M. argues that the trial court
erred by denying his motion to dismiss on speedy trial grounds.  The State counters that the delay from arrest
and both the charge and trial is not presumptively prejudicial and, thus, does
not trigger the Barker factors.  See
Barker
v. Wingo,
407 U.S. 514, 530 (1972) (applying a four-part balancing test in speedy trial
claims which reviews (1) length of delay, (2) reason for delay, (3) assertion
of the right, and (4) prejudice).

A. 
Presumptive Prejudice








The length of the delay is a "triggering
mechanism" for analysis of the remaining Barker factors.  State v. Munoz, 991 S.W.2d 818, 821
(Tex. Crim. App. 1999) (en banc). 
Further analysis is required if the length of the delay is
"presumptively prejudicial." Id. at 821‑22.  Presumptive prejudice is determined from the
circumstances of the case.  See Barker,
407 U.S. at 530‑31; Schenekl v. State, 996 S.W.2d 305, 312 (Tex.
App.BFort Worth 1999), aff'd, 30 S.W.3d 412 (Tex.
Crim. App. 2000).  The length of the
delay is measured from the time of arrest until the time of trial.  Schenekl, 996 S.W.2d at 312 (citing Emery
v. State, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994)).  Most delays of eight months or longer are
considered presumptively unreasonable and prejudicial.  Doggett v. United States, 505 U.S.
647, 651 (1992); see Schenekl, 996 S.W.2d at 312; Pierce v. State,
921 S.W.2d 291, 294 (Tex. App.BCorpus Christi 1996, no pet.).  "The delay that can be tolerated for an
ordinary street crime is considerably less than for a serious, complex
conspiracy charge."  Barker,
407 U.S. at 531.  The delay factor
requires a two‑prong inquiry.  Munoz,
991 S.W.2d at 822.  First, any speedy
trial analysis depends on whether the delay is more than
"ordinary."  Zamorano v.
State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc).  Second, the longer the delay extends beyond
"ordinary," the more prejudicial that delay is to the accused.  Id.

B.  The Record

J.M. was arrested on September 30, 2003 and formally
charged on February 19, 2004 for the offense of escape.[8]  J.M. did not request a speedy trial.  The initial setting was set for February 23,
2004.  The trial court granted the
State's opposed motion for continuance on grounds of inability to locate a
material witness.  The case was reset for
March 1, 2004.  After a detention hearing
and evidentiary pretrial hearings, trial on the merits commenced on March 4,
2004.  Thus, the delay from the arrest to
the formal charge is four months and nineteen days.  The delay from the arrest to trial is five
months.  The delay from the formal charge
to the trial is less than one month.  

C. 
Disposition








The time from J.M.'s arrest to trial is five months,
the longer of the complained of delays. 
"It is our opinion that this short period of time could in no way
be construed as 'presumptively prejudicial.'"  Pete v. State, 501 S.W.2d 683, 687
(Tex. Crim. App. 1973) (finding the span of approximately four months between
the bench warrant and trial not to be presumptively prejudicial).  Thus, we conclude that J.M.'s constitutional
right to a speedy trial was not abridged. 
See id.  Further,
J.M. made no request for a speedier determination of his case.  Id. 
This fact alone would make it difficult for J.M. to prove that he was
denied a speedy trial.  Id.  We overrule J.M.'s third issue.

IV.  DOUBLE
JEOPARDY

By his fourth issue, J.M. argues that the trial
court erred by denying his motion to dismiss on double jeopardy grounds.  Conceding that the Texas Youth Commission
imposed administrative sanctions for the escape, the State responds that
disciplinary sanctions are not punishment. 

A.  The Law








            The Fifth Amendment provides that
"no person shall . . . be subject for the same offence to be twice put in
jeopardy of life or limb . . . ."  U.S. Const. amend. V.; see Lopez
v. State, 108 S.W.3d 293, 295 (Tex. Crim. App. 2003).  The United States Supreme Court stated that
the Fifth Amendment guarantee against double jeopardy consists of three
separate constitutional protections.  North
Carolina v. Pearce, 395 U.S. 711, 717 (1969); Lopez, 108 S.W.3d at
295.  First, it protects against a second
prosecution for the same offense after acquittal.  Lopez, 108 S.W.3d at 295-96.  Second, it protects against a second
prosecution for the same offense after conviction.  Id. 
Last, it protects against multiple punishments for the same offense. Id.  In Texas, "No person for the same
offense shall be twice put in jeopardy of life or liberty; nor shall a person
be again put upon trial for the same offense, after a verdict of not guilty in
a court of competent jurisdiction." 
Tex. Code Crim.
Proc. Ann. art. 1.10 (Vernon 2005).

B.  The Record

At a pretrial hearing, J.M. testified that, after
the arrest for the escape charge, he was returned to the Evins facility.  He was "out of population for a
week" in a small roomBa more secure environment.  After an administrative "Level III"
hearing that lasted approximately an hour, J.M. was ordered to a Behavior
Management Program  that required he
remain in security for sixty to ninety days to see if he improved his
behavior.  J.M. attested that he was in
"security" for a total of forty-five to fifty days and then returned
to his normal dorm.  

C. 
Disposition








J.M. contests his adjudication on grounds that he
has been sentenced to multiple punishments for the same offense.  Because the plain meaning of the laws
contemplate procedures by a court of competent jurisdiction, we conclude that the
double jeopardy clause was neither implicated nor violated by the
administrative sanction.  The trial court could have reasonably concluded that a disciplinary
sanction for an offense committed while J.M. was in custody for another
adjudicated offense was not punishment meted out by a "court of competent
jurisdiction," within the plain meaning of the federal constitution and
article 1.10.  See  Tex. Code
Crim. Proc. Ann. art.
1.10 (Vernon 2005).  We overrule J.M.'s
fourth issue.

V.  CONCLUSION

Having overruled J.M.'s four issues, we affirm the
judgment of adjudication and disposition.

 

ERRLINDA CASTILLO

Justice

 

 

 

Memorandum Opinion delivered and filed

this the 11th 
day of August, 2005.

 











[1] The
first amended petition alleged in part that, on or about September 30, 2003,
J.M., III, escaped from the Texas Youth Commission Evins Regional Juvenile
Center when he was "in custody pursuant to a lawful order of a court:
Judgment on First Amended Second Motion to Modify Disposition (TYC Commitment)
and Order of Commitment of the 92nd District Court of Hidalgo County Texas,
sitting as a Juvenile Court."  





[2] The
only question to be answered in a factual sufficiency review is whether,
considering the evidence in a neutral light, the fact finder was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  There are two ways evidence may be factually
insufficient: (1) the evidence supporting the verdict or judgment, considered
by itself, is too weak to support the finding of guilt beyond a reasonable
doubt; or (2) when there is evidence both supporting and contradicting the
verdict or judgment, weighing all of the evidence, the contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt.  Id. at 484‑85.  "This standard acknowledges that
evidence of guilt can 'preponderate' in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable
doubt."  Id. at
485.  In other words, evidence supporting
a guilty finding can outweigh the contrary proof but still be insufficient to
prove the elements of an offense beyond a reasonable doubt.  Id.  Factual‑sufficiency review begins with
the presumption that the evidence supporting the jury's verdict is legally
sufficient, that is, sufficient under Jackson v. Virginia, 443 U.S. 307,
319 (1979).  See Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996) (en banc). 





[3] A
hypothetically correct charge is one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's
burden of proof or restrict its theories of liability, and adequately describes
the particular offense proof.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Cano v. State,
3 S.W.3d 99, 105 (Tex. App.BCorpus Christi 1999, pet.
ref'd).  A hypothetically correct jury
charge would not simply quote from the controlling statute.  Gollihar v. State, 46 S.W.3d 243, 254
(Tex. Crim. App. 2001).  Its scope is
limited by the statutory elements of the offense as modified by the charging
instrument.  See Fuller v. State,
73 S.W.3d 250, 254 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (quoting Curry
v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).  Malik flatly rejects use of the jury
charge actually given as a means of measuring sufficiency of the evidence.  See Gollihar, 46 S.W.3d at 252.  Malik controls sufficiency of the
evidence analysis even in the absence of alleged jury charge error.  Id. at 255. 





[4]
Roach described the fence as twenty feet high with a curve like a candy cane.





[5]
"'Correctional facility' means a place designated by law for the
confinement of a person arrested for, charged with, or convicted of a criminal
offense."  Tex. Pen. Code Ann.
_ 1.07(14) (Vernon
2004-05); see also Tex. Pen. Code
Ann. _ 1.07(45) (Vernon
2004-05).  





[6] On
cross-examination, Silva testified that punishment for breaches of the
facility's rules includes placing a juvenile in a "holding cell or
six-by-six cell."  





[7] The
State's attempted efforts to admit documents reflecting the judgment were disallowed
upon objection by the defense.





[8] A
petition alleging burglary of a building and burglary of a habitation was filed
on January 15, 2004.  The petition was
amended to include the escape charge and filed on February 19, 2004.  The State proceeded to trial solely on the
escape charge.