STATE OF NORTH CAROLINA v. GLENN EDWARD PIKE

No. COA99-675

(Filed 18 July 2000)

**Search and Seizure— motor vessel—reasonable articulable suspicion**

The trial court erred by finding that the stop of defendant's motor vessel violated the Fourth Amendment, requiring the evidence obtained from that stop to be suppressed and the charges of operating a motor vessel while impaired in violation of N.C.G.S. § 75A-10(b1)(2) to be dismissed, because a Wildlife Resource Commission officer could stop the motor vessel pursuant to N.C.G.S. § 75A-17(a) in order to conduct a safety inspection on the waters of North Carolina without having any reasonable articulable suspicion of criminal activity to justify the stop based on the facts that: (1) it is necessary to stop vessels in order to do safety checks to insure compliance with statutory safety regulations; (2) defendant did not contend he lived on his boat in order to raise his expectation of privacy, nor did the officers ever board defendant's boat; (3) evidence of defendant's intoxication obtained by the officers was within plain view; and (4) the government's interest in maintaining water safety on its lakes and rivers substantially outweighed defendant's expectation of privacy in his boat.

Appeal by the State from an order and memorandum of decision entered 23 October 1998 by Judge Sanford L. Steelman, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 17 April 2000.

**STATE v. PIKE**

[139 N.C. App. 96 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorney General C. Norman Young, Jr., for the State.*

*Tucker, Slaughter & Singletary, P.A., by Robert L. Slaughter, for defendant-appellee.*

HUNTER, Judge.

This case presents a question of first impression for North Carolina, that is, whether a Wildlife Resources Commission officer may stop to conduct a safety inspection of a motor vessel on the waters of North Carolina without having any reasonable, articulable suspicion of criminal activity to justify the stop. Although we refuse to expand the ruling in this case to other factual situations, we hold that under these circumstances the stop was reasonable and therefore did not violate defendant's Fourth Amendment rights. Therefore, we reverse and remand.

The facts in this case are undisputed. On 23 May 1998, North Carolina Wildlife Resources Commission Officer James Pope ("Officer Pope") and Sergeant Howell were patrolling Badin Lake in Stanly County. Officer Pope testified that he and Sergeant Howell were checking every vessel within that vicinity on that night. At about 11:45 p.m., the two men observed a pontoon boat in the area, being operated by Glenn Edward Pike ("defendant"). Neither officer observed any illegal activity at the time of the stop, nor did they observe any activity which would violate any rules or regulations of the Wildlife Resources Commission. Nevertheless, as they neared the pontoon vessel, Officer Pope activated a blue strobe light—signaling the pontoon operator to stop, which defendant did immediately. Officer Pope then switched on a "bright white light, which is a take down light which illuminates the whole interior of a vessel." The purpose of activating the "take down light" is so the officer can see anything, everything and everybody on the vessel. The officers announced their presence, informed defendant that they were going to conduct a safety check of the vessel, and then did so. The officers never boarded the vessel. However, after the safety inspection, defendant was arrested and charged with the criminal offense of operating a motor vessel while impaired (OWI) in violation of N.C. Gen. Stat. § 75A-10(b1)(2).

At trial, defendant entered a plea of not guilty, was tried and found guilty. Upon giving notice of appeal to the superior court, defendant "filed a written Motion to Suppress seeking to suppress

evidence of the stop of his pontoon boat and attached thereto his Affidavit dated the same date." Following the 16 September 1998 hearing on defendant's motion, the trial court concluded that the stop of defendant's vessel was not based upon any reasonable suspicion of illegal activity and thus, violated defendant's Fourth Amendment right to freedom from unreasonable search and seizure. Therefore, the trial court suppressed the evidence of the stop which resulted in the dismissal of the charges against defendant. The State appeals.

The State brings forward only one question for this Court's review: whether the trial court committed prejudicial error by finding that the stop of defendant's vessel violated the Fourth Amendment to the United States Constitution, thus requiring the evidence obtained from that stop to be suppressed and the charges against defendant dismissed.

It is well established that the Fourth Amendment to the Constitution of the United States provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amendment IV. Our courts therefore, have ruled that "[w]hether a [stop,] search or seizure is reasonable is to be determined on the facts of each individual case." *State v. Boone*, 293 N.C. 702, 709, 239 S.E.2d 459, 463 (1977). Furthermore, although not specifically listed in the Amendment, the United States Supreme Court has held that there can be some expectancy of privacy with regard to motor vehicles and vessels; however, "under the overarching principle of 'reasonableness' embodied in the Fourth Amendment, . . . the important factual differences between vessels *located in waters offering ready access to the open sea* and automobiles on principal thoroughfares . . . are sufficient to require a different result . . . ." *United States v. Villamonte-Marquez*, 462 U.S. 579, 588, 77 L. Ed. 2d 22, 31 (1983) (emphasis added). Nevertheless, whether the facts involve the stop of a vessel or that of a motor vehicle, to be allowable under the Fourth Amendment the stop must be reasonable, and reasonableness is a matter of balance. *See Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660 (1979). "Though slightly dif-

ferent tests have been applied, all suspicionless [stop,] search and seizure cases balance governmental interest against individual intrusion in some fashion." *Schenekl v. State*, 996 S.W.2d 305, 309, n.3 (Tex. Ct. App. 1999).

> [T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an objective standard," whether this be probable cause or a less stringent test. In those situations in which the balance of interests precludes insistence upon "some quantum of individualized suspicion," other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field." *Camara v. Municipal Court*, 387 U.S.[] at 532, 18 L. Ed. 2d 930, 87 S. Ct. 1727. . . .

*Prouse*, 440 U.S. at 654-55, 59 L. Ed. 2d 667-68 (footnotes omitted).

The State's interest in the case at bar is the same as articulated in *Klutz v. Beam*, 374 F. Supp. 1129 (W.D.N.C. 1973), to ensure boating and waterway safety for all North Carolinians. Likewise, the State relies on the Boating Safety Act, N.C. Gen. Stat. § 75A *et seq.*, to grant it the authority exercised by Officer Pope and Sergeant Howell. The pertinent section reads:

> Every wildlife protector and every other law-enforcement officer of this State and its subdivisions shall have the authority to enforce the provisions of this Chapter and in the exercise thereof *shall have authority to stop any vessel subject to this Chapter; and,* after having identified himself in his official capacity, *shall have authority to board and inspect any vessel* subject to this Chapter.

N.C. Gen. Stat. § 75A-17(a) (1999) (emphasis added). Furthermore,

> (a) Inspectors and protectors are granted the powers of peace officers anywhere in this State, and beyond its boundaries to the extent provided by law, in enforcing all matters within their respective subject-matter jurisdiction . . . .

> . . .

(c) The jurisdiction of protectors extends to all matters within the jurisdiction of the Wildlife Resources Commission, *whether set out in this Chapter, Chapter 75A*, Chapter 143, Chapter 143B, or elsewhere. *The Wildlife Resources Commission is specifically granted jurisdiction over all aspects of*:

(1) *Boating and water safety*;

. . .

(d)(1) *In addition* to law enforcement authority granted elsewhere, a protector has the authority to enforce criminal laws under the following circumstances:

(1) When the protector *has probable cause to believe that a person committed a criminal offense* in his presence and at the time of the violation the protector is engaged in the enforcement of laws otherwise within his jurisdiction . . . .

N.C. Gen. Stat. § 113-136(a), (c), (d)(1) (1999) (emphasis added).

By reason of the foregoing statutory authority, it is undisputed that Officer Pope and Sergeant Howell, *at some point*, would have had the authority to inspect vessels on Badin Lake, where defendant was boating. Furthermore, our statute clearly *requires no articulable suspicion or probable cause to stop a vessel for a safety check*. N.C. Gen. Stat. § 75A-17(a). However, because it is also undisputed that the wildlife officers had no articulable suspicion or probable cause, we must then determine what "other safeguards are [to be] relied upon to assure that the [defendant's] reasonable expectation of privacy is not 'subject to the discretion of the official in the field.' " *Prouse*, 440 U.S. at 655, 59 L. Ed. 2d at 668 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 532, 18 L. Ed. 2d 930, 937 (1967)). Since this case is one of first impression for North Carolina, we look to other jurisdictions for guidance.

Just recently, the State of Texas dealt with the very issue at hand. We briefly recite the facts. At about midnight, a Texas game warden was patrolling Lake Lewisville in his marked patrol boat when he noticed the defendant's boat pulling out of the marina. Soon thereafter, by authority of Texas' Parks and Wildlife Code, the warden, without reasonable suspicion or probable cause, stopped and boarded defendant's boat for a water safety check. Finding defendant "having trouble answering [the warden's] questions, . . . fumbling with

his fingers, and . . . smell[ing] of alcohol," the warden "performed a horizontal gaze nystagmus test on [defendant] and detected positive indications of intoxication." *Schenekl v. State*, 996 S.W.2d at 308. Consequently, the warden arrested defendant for boating while intoxicated. *Id.*

At trial, defendant filed a motion to suppress the evidence of intoxication resulting from the stop, arguing that his Fourth Amendment right to be free from unreasonable search and seizure had been violated. The trial court denied the motion. Upholding the trial court's denial of defendant's motion to suppress, the Texas Court of Appeals opined that:

> The Fourth Amendment does not prohibit all searches and seizures, only those that are deemed unreasonable. . . . However, under certain limited circumstances, searches and seizures conducted without individualized suspicion may be reasonable under the Fourth Amendment. . . .

*Id.* at 309 (citations omitted).

> [Furthermore,] [i]n weighing the level of intrusion, we consider the individual's expectation of privacy, the length and scope of the detention, the alternative means available in light of the statute's contribution to the state interest, and the discretion given law enforcement officials.

*Id.* at 310. The Court's analysis began with whether defendant had any expectation of privacy in his boat, granted by the Fourth Amendment. The Court decided that defendant, having a possessory interest and being legitimately in the boat, having control of the boat and having the right to exclude all others, "had an expectation of privacy in his boat. . . . [However, in comparison to a home] it is a diminished one." *Id. See Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543 (1924) (Fourth Amendment must recognize the difference between a search of a store, house or other structure and a search of a ship, motor boat, wagon, or automobile); *United States v. Albers*, 136 F.3d 670, 673 (9th Cir. 1998) (government's traditional power to board a vessel is far greater than its power to enter a motor-home or car); *United States v. Cadena*, 588 F.2d 100, 101 (5th Cir. 1979) (there is a greater expectation of privacy aboard a vessel [when] "[t]he ship is the sailor's home"); also recognized in *Klutz v. Beam*, 374 F. Supp. 1129.

> The scope and length of the detention here were not intrusive. The enforcement provision authorizes detention only for the

purpose of ensuring compliance with the registration and safety requirements. The intrusion is minimal in scope because the search may only be directed at the safety items listed in the statute. Further, while the boat must carry several safety and registration items, only a brief visual inspection is necessary to determine compliance. . . .

*Schenekl*, 996 S.W.2d at 310 (citation omitted).

The Court then compared the alternative mechanisms available to the State in enforcing its safety statutes to those mechanisms available in *Prouse*, and found that policemen engaged in highway or roadway safety enforcement have many more options to stopping a motor vehicle than do boat patrolmen. For example, in checking safety registration items,

> [s]ome of the required safety equipment [of a boat] is not capable of outward observation. For example, life jackets and fire extinguishers may be secreted and are also readily detachable. It may well be impossible to observe from a distance that a boater is not carrying the proper number of life jackets or a fire extinguisher. Additionally, though required numbering on the boat is evidence of proper registration, there is no safety inspection on which registration is contingent. Thus, unlike license plates [and inspection tags] on a car, the numbers on a boat do not indicate compliance with safety requirements.

> Further, fixed checkpoints [available to highway patrolmen] are not a viable alternative. As the Supreme Court noted in *Villamonte-Marquez*, "vessels can move in any direction at any time and need not follow established 'avenues' as automobiles must do." 462 U.S. at 589, 103 S. Ct. at 2580. Boats are thus not susceptible to fixed checkpoints on the water. Also, because safety items such as life jackets and fire extinguishers are readily detachable, a checkpoint at a dock or boat ramp would be ineffective in determining whether a boater complied with safety requirements *while actually on the water*. [Thus,] [t]here appear to be no other means as effective as the seizures authorized by the Act [the state's statutes].

*Id.* at 311 (emphasis added). The Texas court went on to consider the issue of whether there were sufficient safeguards in place to ensure that defendant's expectation of privacy was not " 'subject [solely] to the discretion of the official in the field.' " *Prouse*, 440 U.S. at 655, 59

L. Ed. 2d at 668 (quoting *Camara v. Municipal Court*, 387 U.S. at 532, 18 L. Ed. 2d at 937).

Finally, we consider the discretion given law enforcement. The Act's enforcement provision applies to "all vessels on public water," and a stop may be made at any time. Tex. Parks & Wild. Code Ann. § 31.004 (Vernon Supp. 1999). Under the statute, there are no restrictions on a law enforcement officer's discretion. This unfettered discretion conflicts with the Supreme Court's repeated insistence, when construing the Fourth Amendment, that "the discretion of the official in the field be circumscribed, at least to some extent." *See Prouse*, 440 U.S. at 661, 99 S. Ct. at 1400 (and cases cited therein). Thus, the level of intrusion, otherwise minimal, is heightened by the lack of restraint on a law enforcement officer's discretion.

This does not, however, render the intrusion unreasonable under the Fourth Amendment. Although the level of intrusion is escalated by the lack of restraint on the discretion of individual law enforcement officials, it does not rise to an unreasonable level. The reduced expectation of privacy in a boat, the brevity of the encounter, and the lack of alternative means render the level of intrusion reasonable under the circumstances.

Balancing the State's substantial interest in recreational water safety against the intrusion involved, the enforcement provision of the Act does not authorize searches and seizures that violate the Fourth Amendment. . . .

*Schenekl*, 996 S.W.2d at 311.

Although *Schenekl* is not mandatory authority upon this Court, we find that Court's reasoning there extremely persuasive. We first agree that it is impractical as well as perhaps, impossible to check that a vessel is complying with statutory safety regulations if the State is unable to verify that the requirements are being met *while the vessel is at sea*. Thus, we find it necessary that vessels be stopped in order to do safety checks (for fire extinguishers, life jackets and the like). In comparing *Schenekl* to the facts of the case at bar, the officers here never boarded defendant's vessel to inspect it. Thus, their interference with defendant's right to privacy was even less intrusive than in *Schenekl*. The question then becomes whether, in conducting their inspection of defendant's vessel, the officers impermissibly detained defendant. We think not.

STATE v. PIKE

[139 N.C. App. 96 (2000)]

Our Supreme Court has held that the

"capacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. . . ." *Mancusi v. DeForte*, 392 U.S. 364, 20 L. Ed. 2d 1154, 88 S. Ct. 2120 (1968). Thus, what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection, but what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

*State v. Boone*, 293 N.C. at 708, 239 S.E.2d at 463. As owner and operator of the vessel, defendant had to have been aware of the safety regulations which mandatorily are to be followed; and defendant knew or should have known that with regulations also come inspections. Furthermore, defendant does not contend that he lived on his boat or that the officers exceeded their scope of authority by intruding into the boat's private bedrooms as did the officers in *Klutz*, 374 F. Supp. 1129. (In fact the officers never even boarded the present defendant's boat.) Therefore, although defendant had some expectation of privacy, we hold that "it [was] a diminished one," *Schenekl*, 996 S.W.2d at 310, noting that evidence of defendant's intoxication was obtained by the officers because it was "in plain view," as it were, the defendant having "knowingly expose[d] [it] to the public." *Boone*, 293 N.C. at 708, 239 S.E.2d at 463.

Furthermore we, like the *Schenekl* Court, recognize that boats do not display the same safety stickers and licenses as do motor vehicles, neither are all the regulated safety requirements readily able to be seen by an officer while the boat is moving. Additionally, we note that Badin Lake is *not* a manmade lake, landlocked from any other source of water; but in fact, Badin Lake sits on the Yadkin River which runs through more than four counties of this state. Thus, it cannot be said as in *Prouse* that "[q]uestioning of all oncoming traffic at roadblock-type stops is [a] possible alternative." *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 674. We conclude the officers' interference of defendant's movement was minimal and their detention of him, necessary.

We hold then, that pursuant to N.C. Gen. Stat. § 75A-17(a), the officers' stopping defendant without probable cause—for the pur-

pose of inspecting defendant's vessel—was reasonable. We note that defendant's vessel passed its inspection. However, it was defendant himself who did not pass inspection—and the officers needed not even board defendant's vessel to know this. Therefore, we further hold that once the officers stopped defendant for inspection purposes, they had the right to arrest him pursuant to N.C. Gen. Stat. § 113-136, having (at that time) reasonable cause to believe defendant was operating the vessel while impaired. Again, we find the "plain view" doctrine applicable.

> In *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120 (1971) the U.S. Supreme Court held that the police may seize without a warrant the instrumentalities or evidence of a crime which is within "plain view" if three requirements are met. First, the initial intrusion which leads to the plain view discovery of the evidence must be lawful. Additionally, the discovery of the evidence must be inadvertent. Third, it must be immediately apparent upon discovery that the items constitute evidence of a crime. *Id. See also State v. Williams*, 315 N.C. 310, 338 S.E.2d 75 (1986). . . .

*State v. Sapatch*, 108 N.C. App. 321, 325, 423 S.E.2d 510, 513 (1992).

We take great pains, however, to note that facts different from this case may have resulted in a different outcome. However, under these facts, having found that the government's interest in maintaining, for its citizens, water safety on its lakes and rivers substantially outweighed this defendant's expectation of privacy in his boat, the trial court's order suppressing evidence of the stop and dismissing the charges against defendant is hereby reversed. Thus this case is

Reversed and remanded for trial.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.