# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
    :
    v.            : No.  473 C.D. 2020
    : Submitted:  October 11, 2023
Frederick W. Karash,     :
           Appellant  :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE               FILED:  February 6, 2024

Frederick W. Karash (Defendant) appeals *pro se* from the Court of Common Pleas of Erie County's (trial court) judgment of sentence following his summary conviction for violating the Fish and Boat Code[1] (the Code) by having an insufficient number of life jackets known as personal floatation devices (PFDs) aboard his boat. Defendant challenges the trial court's denial of his suppression motion and the sufficiency of the evidence supporting his conviction.  After review, we affirm.

## BACKGROUND

Around 7:30 p.m. on May 20, 2016, while patrolling Lake Erie, Officer James Smolko (Officer Smolko), a waterways conservation officer (WCO) for the

---

[1] 30 Pa.C.S. §§ 101-7314.

Pennsylvania Fish and Boat Commission (Commission), observed individuals fishing from Defendant's boat, which was a Sea Ray Cabin Cruiser approximately 22 feet in length. Trial Court Opinion, 12/24/18, (Op.), at 1; Notes of Testimony, 9/14/18, (N.T.) at 8, 22.[2] Officer Smolko approached Defendant's boat to conduct a fishing license check. Op. at 1; N.T. at 9-10. At the time, Officer Smolko was dressed in full uniform and driving a marked patrol boat. Op. at 1; N.T. at 6-7. Two cadet trainees and another WCO were also on the patrol boat with Officer Smolko. *Id*. Officer Smolko did not activate his patrol boat's lights or sirens as he approached Defendant's boat. Op. at 1; N.T. at 9.

Officer Smolko motored his patrol boat close to Defendant's boat and identified himself as a WCO. Op. at 1; N.T. at 10. Officer Smolko requested that the people on board hold up their fishing licenses. Op. at 3; N.T. at 10. Pennsylvania fishing licenses are small cards with images displayed on the front, which vary between an outline of the keystone or the outline of a fish. N.T. at 12. The back of the fishing license provides the license holder's name and other identifying features. *Id*. at 13. After confirming the individuals who were fishing possessed fishing licenses, Officer Smolko informed Defendant he was going to conduct a safety equipment inspection of the boat, as was ordinary for Officer Smolko following a fishing license check. Op. at 3; N.T. at 13.

Routinely, to conduct a safety equipment inspection, Officer Smolko would check to ensure the boat carried sufficient life jackets or PFDs, and a Type 4 throwable device, which is a throwable seat cushion buoy. N.T. at 13-14. Additionally, Officer Smolko would check for the visual distress signals, day and night use flares or a distress flag, a fire extinguisher, and the boat's registration. *Id*.

---

[2] N.T. refers to the transcript of the September 14, 2018 suppression hearing held before the trial court.

at 14.  Officer Smolko would not board boats to conduct safety equipment inspections, but rather would request the owners or operators of the boats to show him the equipment for his inspection.  Op. at 4; N.T. at 17.

Here, while conducting the safety equipment inspection of Defendant's boat, Officer Smolko requested Defendant hand everyone on board a wearable PFD so Officer Smolko could determine whether the equipment was readily accessible, in serviceable condition, and the appropriate size for the individuals on board.  Op. at 5; N.T. at 26-27.  While Defendant's boat had five people on board, Defendant had only four wearable PFDs.  Op. at 5; N.T. at 15-16.  After determining Defendant was not in compliance with Section 97.1(b) of the Commission's Regulations,[3] which requires a boater have at least one wearable PFD on board for each person, 58 Pa. Code § 97.1(b), Officer Smolko took Defendant's identification and drove away from Defendant's boat to do a vessel and license check through Erie County dispatch.  Op. at 5; N.T. at 17-18.  At the end of the encounter, Officer Smolko gave Defendant a wearable PFD from his patrol boat so Defendant could continue to boat and return to the marina.  Op. at 5; N.T. at 16.  During the entire interaction between Officer Smolko and Defendant, no WCOs boarded Defendant's boat or tied the boats together.  Op. at 5; N.T. at 17.  The encounter lasted between 30 and 40 minutes.  Op. at 6; N.T. at 17, 113.

Officer Smolko issued a summary citation to Defendant for violating Section 97.1(b) of the Commission's Regulations, 58 Pa. Code § 97.1(b).  On June 23, 2016, a magisterial district judge found Defendant guilty of the offense.  Defendant appealed to the trial court. Prior to the trial *de novo*, Defendant filed a suppression motion arguing the stop constituted an unreasonable search and seizure under the

---

[3] The Commission's Regulations refer to Part II, relating to the Fish and Boat Commission, of Title 58 of the Pennsylvania Administrative Code.  *See* 58 Pa. Code §§ 51.1 – 119.8.

3

federal and state constitutions. On September 9, 2016, the trial court conducted a combined suppression hearing and trial. The trial court denied Defendant's suppression motion, found him guilty, and sentenced him to a $75.00 fine. Defendant appealed to the Superior Court of Pennsylvania. A divided three-judge panel reversed Defendant's conviction and found the stop violated his right to be free from unreasonable searches and seizures. The Commonwealth petitioned for reargument, which the Superior Court granted, vacating the panel's decision. On May 30, 2018, the Superior Court, *en banc*, concluded deficiencies in the record precluded its review and vacated Defendant's judgment of sentence and remanded for a new suppression hearing so the record could be properly developed.

On September 14, 2018, the trial court held a suppression hearing and denied Defendant's motion to suppress. Subsequently, on May 6, 2019, the trial court held a trial *de novo* and denied Defendant's summary appeal, reimposing his sentence. Defendant appealed to the Superior Court. On April 3, 2020, the Superior Court transferred the case to this Court.

On appeal to this Court, Defendant, *pro se*, challenges the denial of his suppression motion and his conviction.[4] Regarding the denial of his suppression

---

[4] For ease of reference and analysis, we have summarized Defendant's challenges. In his brief, Defendant asserts nine questions for review as follows:

> 1 Did the Commonwealth meet its burden of proof?
> 2 Was the Ruling of failure to suppress evidence by the lower court unconstitutional as applied by both the Pennsylvania Constitution and the Federal Constitution? Furthermore, was the law used to justify this intrusion properly interpreted and applied?
> 3 Did the Commonwealth show that a special circumstance exists that would enable it to readily usurp the most basic of rights?

**(Footnote continued on next page…)**

4

motion, Defendant argues he had a reasonable expectation of privacy on his boat and Officer Smolko's stop and detention of his boat was not supported by reasonable suspicion, probable cause, or a search warrant, and thus violated his right to be free from unreasonable search and seizure. Defendant's Br. at 8. Regarding his conviction, Defendant asserts the Commonwealth failed to prove Defendant did not have the required number of PFDs aboard his boat. *Id*. at 7

In response, the Commonwealth asserts the stop of Defendant's boat and brief inspection of the fishing licenses, and the subsequent safety inspection, were not unreasonable, and thus did not violate either the state or federal constitutions. Commonwealth's Br. at 4-12. The Commonwealth points out Officer Smolko's stop of Defendant's boat to conduct a fishing license check was not unreasonable as it was his duty as a WCO and is required by the Code. *Id*. at 12-13. Similarly, the

---

4 The Commonwealth uses the excuse of safety as the crux of its argument to justify intrusions on my liberty and privacy. Did the Commonwealth create a hazard to both myself and my passengers as well as the [WCOs] on board my vessel?

5 It is not Contended that the search was done absent of reasonable suspicion and probable cause. Did the stop and search conducted of my boat meet the criteria of being a systematic check rather than an overreach of law enforcement done at the discretion of the officers in the [field]?

6 Based on the testimony found credible by the lower court of the Commonwealth witness [Officer Smolko], did the Commonwealth contradict itself so egregiously as to leave the question of fact indeterminable?

7 Should the Commonwealth Witnesses and the Prosecutors be prosecuted for the egregious behavior and blatant disregard for the rule of law based on the contradictory testimony of the Commonwealth witness and inability to honor his/their Constitutional oath?

8 Did the Commonwealth prove that a less intrusive method of ensuring boater safety is not practical?

9 Did Officer Smolko ignore previous edicts set forth by both the lower courts and the Superior Court in conducting searches/inspections of boats that lacked probable cause?

Defendant's Br. at 5.

5

Commonwealth asserts the safety equipment inspection of Defendant's boat was not unreasonable as boaters are required to possess certain safety equipment and the Code sets forth the powers and duties of the WCOs, which includes stopping and boarding any boat to inspect for compliance. *Id*. at 13-15. Finally, the Commonwealth contends it produced sufficient evidence to prove Defendant failed to have the required number of wearable PFDs aboard his boat. *Id*. at 17.

## DISCUSSION

### Suppression Motion

First, we consider Defendant's challenge to the trial court's denial of his suppression motion. When addressing a challenge to the denial of a suppression motion, our review is limited to determining whether the trial court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted). Because the Commonwealth prevailed before the trial court, we consider only the Commonwealth's evidence and so much of the Defendant's evidence as is uncontradicted. *Id*. So long as the trial court's factual findings are supported by the record, we are bound by those findings and will reverse the trial court's decision only if its legal conclusions are erroneous. *Id*. To the extent we address issues of law, our review is *de novo. Commonwealth v. Beaman*, 880 A.2d 578, 581 (Pa. 2005) (citation omitted). In other words, we "are not bound by the legal conclusions of the . . . lower court[]." *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019) (citation omitted).

Because we are addressing a constitutional challenge, we begin by reviewing the Fourth Amendment to the United States (U.S.) Constitution, U.S. Const. amend.

6

IV (Fourth Amendment), and its similar state counterpart, article I, section 8 of the Pennsylvania Constitution, Pa. Const. art. I, § 8. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Similarly article I, section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8.

These constitutional provisions guarantee an individual's freedom from unreasonable searches and seizures, but they do so only in areas where an individual has a protected privacy interest. *Commonwealth v. Enimpah*, 106 A.3d 695, 699 (Pa. 2014). Where an individual does not have a reasonable and protected expectation of privacy, neither the Fourth Amendment nor article I, section 8 of the Pennsylvania Constitution is implicated. *Id*. Where there is not a reasonable expectation of privacy in a place, a search or seizure cannot be deemed unreasonable, even if the police lacked probable cause or a warrant. *Commonwealth v. Edwards*, 874 A.2d 1192, 1195 (Pa. Super. 2005). There is no dispute in this case that Officer Smolko did not have reasonable suspicion, probable cause, or a warrant before approaching Defendant's boat to conduct a fishing license check or subsequent safety equipment inspection. Whether an individual has a reasonable expectation of

7

privacy in a boat on the water such that a WCO's approach and stop of the boat to conduct a fishing license check or safety equipment inspection, absent reasonable suspicion, probable cause, or a search warrant, violates the individual's constitutionally protected rights, is an issue of first impression in Pennsylvania. We must determine (1) whether Defendant demonstrated he had a reasonable and legitimate expectation of privacy which was infringed upon by Officer Smolko and (2) whether Officer Smolko's seizure of Defendant was constitutionally "reasonable." *See Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa. Super. 2019) (citation and bracket omitted).

We begin our analysis by considering Pennsylvania case law related to vehicle seizures by law enforcement generally. The Pennsylvania Supreme Court has determined that while individuals have a lesser expectation of privacy in their vehicles than in their homes, occupants of vehicles do not forfeit all expectations of privacy. *Commonwealth v. Maguire*, 215 A.3d 566, 574 (Pa. 2019) (citation omitted). When a law enforcement officer initiates a vehicle stop, the vehicle, as well as the driver, are seized for purposes of the state and federal constitutions. *Commonwealth v. Shabezz*, 166 A.3d 278, 287 (Pa. 2017) (citation omitted). For such seizure to be constitutional, it must be reasonable. *Id*. To determine whether a seizure that is less intrusive than a traditional arrest is "reasonable," the Pennsylvania Supreme Court has directed reviewing courts to apply the *Brown v. Texas*, 443 U.S. 47 (1979), three-prong balancing test. *Beaman*, 880 A.2d at 582. Under this test, the court weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown*, 443 U.S. at 50. Under this standard, to be deemed "reasonable," the seizure ordinarily must have been supported by reasonable

8

suspicion, based upon objective facts, that the individual was involved in criminal activity. *Id*. at 51.

However, while the general rule requires law enforcement have, at least, reasonable suspicion to initiate a seizure, the existence of individualized suspicion is not a requirement in every situation. Rather, Pennsylvania acknowledges an exception to this general rule where law enforcement seizures are designed to serve a governmental "special need." *Beaman*, 880 A.2d at 582. For example, both the United States Supreme Court and the Pennsylvania Supreme Court have recognized, under some circumstances, the constitutionality of roadblocks and checkpoints, which effectively constitute suspicionless seizures.

In *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 451 (1990), the United States Supreme Court determined driving under the influence roadblocks constitute a reasonable means of advancing the vital public interest in reducing impaired driving deaths and injuries, while they involve only a modest intrusion on the privacy and liberty of motorists. Therefore, the Court concluded that such checkpoints do not offend the Fourth Amendment. *Id*. Similarly, the Pennsylvania Supreme Court has held "systematic, non-discriminatory, non-arbitrary checkpoints do not offend the Pennsylvania Constitution." *Commonwealth v. Worthy*, 957 A.2d 720, 724–25 (Pa. 2008) (citations omitted). Specifically, in *Commonwealth v. Blouse*, 611 A.2d 1177, 1180 (Pa. 1992), the Pennsylvania Supreme Court concluded that checkpoints instituted to detect registration, licensing, and equipment violations are consistent with article I, section 8 of the Pennsylvania Constitution, so long as they are conducted in conformance with required guidelines. The Court noted substantial compliance with these guidelines, as outlined below, is all that is required to reduce the intrusiveness on the individual to a constitutionally acceptable level:

[T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a . . . roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Id.* Therefore, Pennsylvania law acknowledges, under certain conditions, suspicionless seizures of vehicles do not necessarily violate the Fourth Amendment or article I, section 8 of the Pennsylvania Constitution.

While the courts of this Commonwealth have not yet had the opportunity to determine whether the Fourth Amendment and article I, section 8 of the Pennsylvania Constitution prohibit a WCO from approaching and detaining a boat on the water to conduct a fishing license check and safety equipment inspection absent reasonable suspicion, probable cause, or a search warrant, other jurisdictions have examined similar issues. Although we are not bound by decisions of courts of other jurisdictions, when confronted with a question unaddressed by the courts of this Commonwealth, we may use those decisions for guidance so long as they are compatible with Pennsylvania law. *M4 Holdings, LLC v. Lake Harmony Ests. Prop. Owners' Ass'n*, 237 A.3d 1208, 1221 n.14 (Pa. Cmwlth. 2020) (citation omitted).

10

First, we examine the Eleventh Circuit Court of Appeals' decision in *United States v. Thompson*, 928 F.2d 1060 (11th Cir. 1991). In *Thompson*, the United States Coast Guard boarded the defendant's boat to conduct a documents and safety inspection. *Id*. While conducting the inspection, the Coast Guard found cocaine in a storage compartment. *Id*. Following his indictment for charges related to the cocaine, the defendant filed a motion to suppress arguing the Coast Guard's search of his boat violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id*. In affirming the lower court's denial of his suppression motion, the court wrote: "[A]t sea, a person's expectation of privacy may be severely restricted compared with expectations of privacy on land." *Id*. at 1064-65. The court noted this lowered expectation of privacy is, at least in part, due to the statutory authorization of the Coast Guard to board boats and conduct document and safety inspections under 14 U.S.C. § 89(a),[5] even without suspicion of criminal activity.

---

[5] Section 89(a), titled Law Enforcement, provides:

> The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

**(Footnote continued on next page…)**

11

*Id.* Because the statute expressly granted the Coast Guard authority to board boats and conduct inspections, the court concluded that an individual could not have a reasonable expectation of privacy in any area the Coast Guard was authorized to inspect and safety check. *Id.* While the court noted the Coast Guard would not be permitted to rummage through private areas, knapsacks, or duffel bags, it pointed out that because the defendant did not know where the safety equipment was located, the Coast Guard could actively search for the safety equipment in various parts of the boat, including the storage compartment which contained items subject to inspection like life jackets and sails. *Id.* at 1065.

Next, in *Schenekl v. State*, 996 S.W.2d 305, 308 (Tex. App. 1999), the Court of Appeals of Texas, Fort Worth, addressed a similar issue. A game warden was patrolling a lake in his marked patrol boat when he observed the defendant's boat pulling out of the marina. *Id.* By authority of Texas's Parks and Wildlife Code,[6] the warden, without reasonable suspicion or probable cause, stopped and boarded the defendant's boat for a water safety check. *Id.* After observing the defendant during the safety check, the warden requested the defendant submit to sobriety tests, which ultimately led the warden to arrest the defendant for boating while intoxicated. *Id.* The defendant filed a motion to suppress before the trial court asserting the Parks and Wildlife Code's provision permitting a warden to stop and board a boat for a water safety check without reasonable suspicion or probable cause violated the Fourth Amendment's prohibition against unreasonable searches and seizures. In

---

14 U.S.C. § 89(a).

[6] Tex. Parks & Wild. Code §§ 1.001-355.003 (1975).

12

affirming the lower court's denial of the defendant's suppression motion, the court noted:

> The Fourth Amendment does not prohibit all searches and seizures, only those that are deemed unreasonable . . . . However, under certain limited circumstances, searches and seizures conducted without individualized suspicion may be reasonable under the Fourth Amendment.

*Id*. at 309. While the court concluded the defendant had an expectation of privacy in his boat, it observed, in comparison to a home, the expectation of privacy was diminished. *Id*. at 310. The court explained:

> The scope and length of the detention here were not intrusive. The enforcement provision authorizes detention only for the purpose of ensuring compliance with the registration and safety requirements. The intrusion is minimal in scope because the search may only be directed at the safety items listed in the statute. Further, while the boat must carry several safety and registration items, only a brief visual inspection is necessary to determine compliance.

*Id*. The court ultimately concluded that in balancing the state's "substantial interest in recreational water safety against the intrusion involved, the enforcement provision of [the Parks and Wildlife Code did] not authorize searches and seizures that violate the Fourth Amendment." *Id*. at 311.

Similarly, in *State v. Pike*, 532 S.E.2d 543 (N.C. App. 2000), a wildlife resource commission officer stopped a boat to conduct a safety check. At the time of the stop, the officer did not observe any illegal activity or activity which would violate the rules or regulations of the wildlife resources commission. *Id*. at 545. The officer never boarded the boat, but following the safety inspection, the officer arrested the defendant for operating a motor vessel while impaired. *Id*. The defendant filed a motion for suppression, which the trial court granted concluding

13

that the stop of defendant's boat was not based upon any reasonable suspicion of illegal activity and thus violated the defendant's Fourth Amendment right against unreasonable search and seizure. *Id*. The state appealed. The Court of Appeals of North Carolina reversed noting that while the defendant had an expectation of privacy in his boat, it was a diminished one. *Id*. Considering the practicalities of the officer's stop, the court explained:

> [I]t is impractical as well as perhaps, impossible to check that a vessel is complying with statutory safety regulations if the State is unable to verify that the requirements are being met *while the vessel is at sea.* Thus, we find it necessary that vessels be stopped in order to do safety checks (for fire extinguishers, life jackets and the like). . . . [T]he officers here never boarded defendant's vessel to inspect it. Thus, their interference with defendant's right to privacy was even less intrusive than in *Schenekl.* The question then becomes whether, in conducting their inspection of defendant's vessel, the officers impermissibly detained defendant. We think not.

*Id.* at 548 (emphasis in original). The court ultimately concluded that under the relevant statute authorizing an officer to stop a boat without probable cause for the purpose of inspection, the officers' stop was reasonable. *Id*. at 549.

Furthermore, in *United States v. Villamonte-Marquez*, 462 U.S. 579 (1983), the United States Supreme Court addressed whether customs officials violated the Fourth Amendment when they boarded a boat without any suspicion of wrongdoing to inspect documents, when acting under 19 U.S.C. § 1581, which provides:

> Any officer of the customs may at any time go on board of any vessel . . . at any place in the United States . . . and examine the manifest and other documents and papers . . . and to this end may hail and stop such vessel . . . and use all necessary force to compel compliance.

The Court explained its conclusion that the government's boarding of the boat did not violate the Fourth Amendment as follows:

14

[H]ere[,] the First Congress clearly authorized the suspicionless boarding of vessels, reflecting its view that such boardings are not contrary to the Fourth Amendment; this gives the statute before us an impressive historical pedigree. Random stops without any articulable suspicion of vehicles away from the border are not permissible under the Fourth Amendment . . . but stops at fixed checkpoints or at roadblocks are. The nature of waterborne commerce in waters providing ready access to the open sea is sufficiently different from the nature of vehicular traffic on highways as to make possible alternatives to the sort of "stop" made in this case less likely to accomplish the obviously essential governmental purposes involved. The system of prescribed outward markings used by States for vehicle registration is also significantly different than the system of external markings on vessels, and the extent and type of documentation required by federal law is a good deal more variable and more complex than are the state vehicle registration laws. The nature of the governmental interest in assuring compliance with documentation requirements . . . are substantial; the type of intrusion made in this case, while not minimal, is limited. All of these factors lead us to conclude that the action of the . . . officers in stopping and boarding the [vessel] was "reasonable," and was therefore consistent with the Fourth Amendment.

*Id*. at 592-93 (internal citations omitted).

Next, we turn to the law governing the authority of WCOs in Pennsylvania. The Commission's purpose is to administer and enforce the Code and other Commonwealth laws relating to the "encouragement, promotion and development of the fishery interests," the "protection, propagation and distribution of fish," the "management of boating and the operation of boats," and the "encouragement, promotion and development of recreational boating." 30 Pa.C.S. § 321. The Commission promulgates the rules and regulations for the use and protection of the lands and waters of the Commonwealth as it deems necessary or in the best interest of the Commonwealth. 30 Pa.C.S. § 741(a). Additionally, the Commission is authorized to implement regulations to "provide for the operation and navigation of boats, including the rules of the road for boating, the ways, manner, methods and

15

means of boating, [and] the management of boats and the use thereof." 30 Pa.C.S. § 5123(a). In relevant part, the Commission's regulations may relate to the "[p]rotection of the health and safety of persons on boats, towed by boats, or on, in or along the waters of this Commonwealth[,]" as well as the "[e]quipment requirements for boats, operators of boats, passengers on boats and persons towed or pulled by boats." 30 Pa.C.S. § 5123(a)(1). To enforce the Code and the Commission's regulations, the Commission appoints WCOs with law enforcement powers who have the power and duty to "[e]nforce all laws of this Commonwealth relating to fish and watercraft." 30 Pa.C.S. § 901(a)(1).

Regarding the Commonwealth's fishing license requirements, no person over 16 years of age is permitted to fish in any waters without first obtaining a fishing license, which is required to be kept about the person while fishing and shown upon the request of any WCO. 30 Pa.C.S. § 2703. The license holder must also produce additional identification upon a WCO's request. *Id*. Thus, WCOs are statutorily authorized to ensure any individual fishing in the Commonwealth's waters has a valid fishing license. *See id*.

Further, regarding safety equipment inspections, Section 901(a)(10) of the Code provides WCOs with authority to stop and board boats to inspect for compliance with the Code's provisions dealing with boats and boating. 30 Pa.C.S. § 901(a)(10). This section provides an exception, specifying when a boat is lying at its regular mooring or berth,[7] a WCO cannot board without the owner's consent or a search warrant. *Id*.

---

[7] According to Boats.net's website, a "mooring is a catch-all term that can be used any time a boat is secured to any permanent fixture. It can also refer to the area of water used for storing boats by securing them to fixtures on the water's bed." Berthing is a term used "to differentiate and describe the type of mooring that occurs. It generally refers to smaller watercraft moored for an indefinite **(Footnote continued on next page…)**

16

Here, Defendant argues Officer Smolko violated his state and federal constitutional rights against unreasonable searches and seizures. Specifically, Defendant accuses the Commonwealth of believing that "simply because [he] choose[s] to captain a boat that [he] has foregone [his] right to a reasonable expectation of privacy." Defendant's Br. at 8.[8] While we agree Defendant had an expectation of privacy in his boat, we determine that, consistent with Pennsylvania law regarding vehicles generally, Defendant's expectation of privacy on his boat was a diminished one.

In light of the statutory authority the legislature granted to WCOs, Defendant has failed to demonstrate that he had a reasonable or legitimate expectation of privacy infringed upon by Officer Smolko. There is no statutory provision in the Code that requires a WCO have reasonable suspicion, probable cause, or a search warrant to conduct a fishing license check. The statutory language clearly requires people who are fishing to show their license and identification to a WCO upon request. Similarly, there is no statutory provision in the Code requiring a WCO have reasonable suspicion, probable cause, or a search warrant to conduct a safety

---

period of time in an allocated space within a dock." *See* https://www.boats.net/blog/mooring-docking-berthing-anchoring-explained#:~:text=Whenever%20a%20boat%20is%20attached,secured%20to%20any%20permanent%20fixture (last visited 2/5/2024).

[8] Defendant contends that because the boat contains both a bed and a lavatory, any "reasonable person would expect privacy in their own bed and bathroom." Defendant's Br. at 8. However, we accept the facts as found by the trial court so long as they are supported by the record. *See Jones*, 988 A.2d at 654. Thus, insofar as Defendant's arguments rely on factual assertions that were not found credible by the trial court, we reject those arguments. Because the trial court found credible Officer Smolko's testimony that no WCOs boarded Defendant's boat at any time during the encounter, we need not address any assertion that WCOs infringed on Defendant's privacy by entering bedroom or lavatory areas of Defendant's boat.

equipment inspection.[9] We find instructive the legislature's decision to carve out an exception to the general rule mandating that when a boat is at its regular mooring or berth, a WCO cannot board without consent of the owner or a search warrant. *See* 30 Pa.C.S. § 901(a)(10). Otherwise, the Code grants WCOs the authority to "stop and board boats for the purpose of inspection" to ensure compliance with the Code and its related regulations. *Id.* In contrast, for violations unrelated to safety inspections, the Code requires a WCO to have probable cause to stop and search a boat. 30 Pa.C.S. § 901(a)(5). This reflects our legislature's clear authorization of the suspicionless boarding of boats to conduct safety equipment inspections.

Given the legislature's express grant of statutory authority for WCOs to check fishing licenses, we, like the courts in *Thompson*, *Schenekl*, *Pike*, and *Villamonte-Marquez*, conclude it would be unreasonable for any individual fishing in the Commonwealth's waters to expect privacy from WCOs who approach to conduct a fishing license check. Likewise, because of the WCOs' express statutory authority to board boats to conduct safety equipment inspections, it would be unreasonable for anyone to expect privacy in areas of the boat that are subject to a safety equipment inspection. Because Defendant had no reasonable expectation of privacy from the temporary detention of his boat while Officer Smolko conducted a fishing license check and safety equipment inspection, where no WCOs boarded Defendant's boat or infringed on any areas of the boat where Defendant may have had a reasonable expectation of privacy, there was no "unreasonable search or seizure" in violation of either the Fourth Amendment or article I, section 8 of the Pennsylvania Constitution.

Moreover, even if we accepted Defendant's assertion that he had a reasonable expectation of privacy from Officer Smolko's detention to check for fishing licenses

---

[9] This is in contrast to 30 Pa.C.S. § 901(a)(5) which requires a WCO have probable cause that a violation of Title 30 has occurred in order to conduct a stop to search vehicles or boats.

18

and conduct a safety equipment inspection, Defendant's claim would still fail. In considering whether Officer Smolko's actions violated Defendant's right to be free from unreasonable search and seizure, we conduct a balancing analysis wherein the intrusion on Defendant is balanced against the government's promotion of legitimate interests. *Blouse*, 611 A.2d at 1178. In balancing these opposing interests, our primary concern is protecting individuals from arbitrary invasions at the unrestricted discretion of law enforcement officers in the field. *Id.*

The Commonwealth has a legitimate interest in preserving its natural resources, as well as in the health, safety, and well-being of its citizens, including its boaters. *See Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 302-03 (1977) (noting the state has a substantial interest in protecting its citizens). Here, Defendant had individuals fishing on his boat in plain view of WCOs patrolling Lake Erie. Officer Smolko's approach and request to view fishing licenses, without boarding Defendant's boat, was minimally intrusive and in furtherance of his duty as a WCO to ensure compliance with the Code. Likewise, Officer Smolko's safety equipment inspection of Defendant's boat was minimally intrusive. Even though by statutory law, the WCOs had the power to board Defendant's boat, they chose not to do so. Rather, Officer Smolko stayed on his patrol boat and requested Defendant show him the equipment for inspection. The entire interaction between Officer Smolko and Defendant included a brief visual inspection, which lasted less than 40 minutes. Thus, the scope and the length of the detention were minimally intrusive. We conclude Officer Smolko's brief detention of Defendant's boat to conduct a fishing license check and safety equipment inspection constituted a reasonable means of advancing the vital public interest in preserving the Commonwealth's

19

natural resources and ensuring boater safety, while involving only a minimal intrusion on Defendant's privacy or liberty.

We reject Defendant's assertions that there are "less intrusive methods" of ensuring boater safety than the safety equipment inspection conducted in this case. *See* Defendant's Br. at 17. Officer Smolko conducted the safety equipment inspection in a minimally intrusive manner. Furthermore, by providing a PFD to Defendant so that he and his passengers could continue to boat, Officer Smolko made an effort to be less intrusive and disruptive to Defendant's day. To that end, this Court cannot envision any practical, less intrusive, way for WCOs to comply with their statutory duty to conduct safety equipment inspections of boats on the water than to briefly detain those boats to ensure they comply with safety equipment requirements. A WCO must necessarily detain a boat on the water in order to conduct fishing license checks and safety equipment inspections. In balancing the Commonwealth's legitimate interests in the safety of its citizens, including those enjoying Pennsylvania's waterways, against the minimal intrusion of Defendant's brief detention, Officer Smolko's stop and detention of Defendant's boat while he conducted the fishing license check and safety equipment inspection was reasonable.

Because Officer Smolko did not infringe into any area where Defendant maintained a reasonable expectation of privacy, the protections of the Fourth Amendment and article I, section 8 of the Pennsylvania constitution were not triggered. Furthermore, even if we were to conclude Defendant maintained a reasonable expectation of privacy from Officer Smolko's brief detention, Officer Smolko's intrusion was minimal when balanced against the Commonwealth's legitimate interest in preserving its natural resources, as well as ensuring the safety of its citizens utilizing Pennsylvania's waterways. Therefore, we conclude the

20

WCO's brief, suspicionless detention of Defendant's boat on the water to conduct a fishing license check and safety equipment inspection did not violate Defendant's rights against unreasonable search and seizure under either the Fourth Amendment or article I, section 8 of the Pennsylvania Constitution. Accordingly, the trial court did not err in denying Defendant's suppression motion.

## Sufficiency of the Evidence

Next, we address Defendant's challenge to the sufficiency of the evidence supporting his conviction. Defendant argues the Commonwealth failed to meet its burden of proof. Specifically, Defendant contends that because Officer Smolko did not board his boat, Officer Smolko failed to inspect the safety equipment and failed to prove the number of PFDs aboard his boat.[10] Defendant's Br. at 7.

We review a sufficiency of the evidence claim as follows:

> We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact[-]finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

---

[10] The irony of this argument does not escape the Court considering, in the same breath, Defendant wanted an even lesser intrusion.

21

*Commonwealth v. Bowens*, 265 A.3d 730, 740-41 (Pa. Super. 2021), *appeal denied*, 279 A.3d 508 (Pa. 2022) (citation omitted). The Commonwealth bears the burden of proof beyond a reasonable doubt of all the elements of a crime. *Commonwealth v. Hilbert*, 382 A.2d 724, 729 (Pa. 1978). Further, the burden of proof beyond a reasonable doubt applies to summary offenses just as it does to other criminal charges. *Commonwealth v. A.D.B.*, 752 A.2d 438, 443 (Pa. Cmwlth. 2000) (citation omitted).

Any person who violates a rule or regulation under the Code commits a summary offense. *See* 30 Pa.C.S. § 2102. In this case, Officer Smolko cited Defendant for violating Section 97.1 of the Commission's Regulations, 58 Pa. Code § 97.1. In relevant part, Section 97.1(b) of the Commission's Regulations provides "[a] person may not use a boat unless at least one wearable PFD is on board for each person." *Id*. The regulation defines a PFD as "[a] life preserver that is approved by the Commandant of the United States Coast Guard under 46 C.F.R Part 160 (relating to lifesaving equipment)." 58 Pa. Code § 97.1(a). Additionally, Section 97.1(c) of the Commission's Regulations indicates a person "may not use a boat 16 feet or more in length unless one throwable PFD is on board in addition to the total number of PFDs required [for each person aboard the boat]." 58 Pa. Code § 97.1(c). Regarding "throwable" versus "wearable" PFDs, the regulation specifies a throwable PFD is "intended to be thrown to a person in the water." 58 Pa. Code § 97.1(a). A PFD which is marked as throwable, Type IV, or Type V with Type IV performance, is considered a throwable PFD. *Id*. Meanwhile, a wearable PFD is "intended to be worn or otherwise attached to a person's body. A PFD marked as wearable, Type I, Type II, Type III, or Type V with Type (I, II, or III) performance

22

is considered a wearable PFD." *Id.* The regulation specifies that "[u]nless specifically marked otherwise, a wearable PFD is not a throwable PFD." *Id.*

Here, considering the trial court's express credibility determinations and viewing the evidence in the light most favorable to the Commonwealth, Officer Smolko's testimony established Defendant had four passengers on board his boat for a total of five people, but only four wearable PFDs available. Because Section 97.1(b) of the Commission's Regulations requires a boater have at least one wearable PFD on board for each person on the boat, the trial court properly found each element of the offense charged was supported by sufficient evidence to prove Defendant guilty beyond a reasonable doubt.

Moreover, the trial court properly rejected Defendant's argument the throwable PFD on his 22-foot boat should have counted as a wearable PFD. Because of the size of his boat and number of individuals aboard, the regulations required Defendant have five wearable PFDs and one throwable PFD aboard his boat, and the regulation specifies the two types of PFDs are not interchangeable. *See* 58 Pa. Code § 97.1(a)-(c). Therefore, the Commonwealth met its burden of proof, and the trial court did not err or abuse its discretion by finding Defendant guilty of violating the Code by having an insufficient number of wearable PFDs aboard his boat.

## CONCLUSION

The trial court's factual findings are supported by the record, and we find no error in its legal analysis. The trial court properly found the Commonwealth produced evidence demonstrating Defendant lacked a reasonable expectation of privacy from the brief detention by Officer Smolko to conduct a fishing license check and safety equipment inspection. Further, when balanced against the legitimate interests of the Commonwealth, any intrusion on Defendant's expectation

23

of privacy was minimal. Therefore, the trial court properly denied Defendant's motion to suppress. Further, the Commonwealth presented sufficient evidence to prove Defendant guilty beyond a reasonable doubt. Accordingly, we affirm the trial court's judgment of sentence.

_____

STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No.  473 C.D. 2020 |
| | : | |
| Frederick W. Karash, | : | |
| Appellant | : | |

# **O R D E R**

    **AND NOW**, this 6th day of February 2024, the Court of Common Pleas of Erie County's June 24, 2019 judgment of sentence is hereby **AFFIRMED**.


_____
STACY WALLACE, Judge